## SAMUEL A. MORRISON v. JOHN WILSON AND ANN R. WILSON.

MEANING OF WORDS USED IN A DEED. — The grantor in a deed has the right, by a clause inserted in the same, to set aside the general sense of the words he uses, and, for the purposes of the deed in question, to assign to them another and different meaning.

LIMITATION OF MEANING OF WORDS USED 'IN A DEED.—Words used in a deed conveying the property in fee simple absolute, will be construed to convey only the present interest of the grantor, and not to pass an after acquired title, if a clause is inserted declaring that as to title it is only a quitclaim deed.

QUITCLAIM DEED.—A quitclaim deed does not convey a subsequently acquired title of the vendor to the property.

DEFINITION OF WORDS USED IN A CONTRACT. — Contracting parties have the power to define the words which they use in the contract, and if the agreed definitions are free from ambiguity, the contract will be enforced according to the definition thus assigned.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*E. W. F. Sloan*, for Appellant, argued that the Court should construe the deed in the light which the parties understood it; and cited *Wallis' Executor* v. *Wallis*, 4 Mass. 136; and *Jackson* v. *Myers*, 3 John. 395; and that the words "granted," "bargained," and "sold," found in the deed, were qualified by the declaration subsequently made in it that the deed was understood to be a quitclaim deed.

He further contended that the words "grant," "bargain," and "sell," in a deed, did not prevent its operating as a mere release or quitclaim; and cited *Burnett* v. *Irwin*, 3 J. R., 193; and that the ordinary and only effect of a deed of bargain and sale under the Statute of Uses, in the absence of a covenant of warranty, was, to convey to the vendee whatever estate the vendor had at the time of the delivery of the deed, and that there was nothing in the thirty-third section of the Act concerning conveyances preventing the deed from operating according to the declared intent of the parties.

As to the construction of the thirty-third section of the Act concerning conveyances, Mr. Sloan referred to *Frink* v. *Darst*, 14 Ill. 308, and *Bogy* v. *Shoah*, cited in the opinion. As to the form and character of a deed conveying a fee simple absolute, Mr. Sloan referred to *Van Renssellaer* v. *Kearny*, 11 How. U. S. 322.

*Williams & Thornton*, for Respondents, argued that the words in the deed " to have and to hold to the said Minor, his heirs and assigns, from claims of said Perkins or his heirs," constituted a covenant of nonclaim ; and cited 8 Met. 410 ; *Midgett* v. *Brooks*, 12 Iredell, 147 ; and Bacon's Ab. Cov. A.; and that a covenant of nonclaim estopped the grantor from setting up an after acquired title; and cited *Clark* v. *Baker*, 14 Cal. 630 ; *Gibbs* v. *Thayer*, 6 Cush. 32 ; *Newcomb* v. *Presbry*, 8 Met. 406 ; and Rawle on Covenants, 238, 239. They also argued that the covenant of warranty also estopped the plaintiff; and cited *Douglass* v. *Scott*, 5 Ohio, 198 ; *Massie* v. *Sebastian*, 4 Bibb, 436 ; *Wark* v. *Willard*, 13 New Hamp. 389 ; and 3 Barb. Ch. R. 567. They further contended that the clause appended to the deed did not render the preceding parts of it ineffectual to pass an after acquired title, because it was repugnant to the preceding part of the deed, and that it must therefore be rejected ; and cited 16 Johns. 178 ; *Dow* v. *Lewis*, 4 Gray, 468 ; *Mann* v. *Ward*, 2 Atkins, 238 ; *Browning* v. *Wright*, 2 Bos. & Pul. 13.

*Sloan*, in reply, urged that the old doctrine that a covenant of nonclaim amounted to a covenant of warranty, had been overruled ; and cited *Pike* v. *Galvin*, 29 Maine, 185 ; and *Partridge* v. *Patten*, 33 Maine, 383.

By the Court, Shafter, J. :

This action was brought to recover of the respondents fifty vara lot No. 735, in the City of San Francisco. Hitchcock and Van Winkle being proprietors of the lot under an Alcalde

44

grant, conveyed it to one Ford on the 20th of March, 1852. On the 21st of September, 1853, Ford mortgaged the lot to one Perkins, who thereafter bought the same under a decree of foreclosure, and on the 18th of March, 1857, he, the said Perkins, received a Sheriff's deed therefor, which deed was recorded the same day. Perkins sold and conveyed the lot to the appellant, Morrison, May 21st, 1857. Upon this state of facts there could be no doubt that at the commencement of this action the title and right of possession were in Morrison.

It appears, however, that on the 3d of May, 1851, Perkins, who then held what is known as a Colton grant, covering the lot, executed to one Minor a deed, the terms whereof were as follows :

"This indenture, made and executed this 3d of May, 1851, between Dennis S. Perkins, of the first part, and Daniel K. Minor, of the second part, witnesseth : That the said Perkins, for the sum of $500 in hand paid, the receipt whereof is hereby acknowledged, has granted, bargained, sold and hereby conveys to the said Minor, his heirs and assigns, a fifty vara lot in the City of San Francisco, known on the plan of the said city made by one William M. Eddy, the Surveyor of said city, as lot No. 735, which fronts on Harrison street fifty varas, and on Fremont street fifty varas, with all its appurtenances thereto belonging, which lot I have built a house on, and have full and peaceable possession of the same ; to have and to hold, to the said Minor, his heirs and assigns, from claims of the said Perkins or his heirs ; and the said Perkins covenants he has done no act to encumber or injure the title thereof. It is fully understood that as to title this is only a quitclaim deed.

"Given under our hands and seals the day and year above written.

"DENNIS S. PERKINS. [L.S.] "

Minor conveyed the lot to Mrs. Wilson by a deed of like character on the 7th of May, 1851.

It is claimed by the respondents that the true title acquired

by Perkins under the Sheriff's deed of March, 1857, vested in Minor by operation of law *eo instanti* the deed was given, and that the plaintiff therefore took nothing by the subsequent deed of Perkins to him.

First—The thirty-third section of the Act relating to conveyances is as follows : " If any person shall convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not at the time of such conveyance have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid as if such legal estate had been in the grantee at the time of such conveyance." (Acts 1850, p. 252.)

The first question is whether the deed by Perkins to Minor " purports " to convey the lot in controversy " in fee simple absolute."

The first clause in the deed bearing upon the question shows a bargain and sale of the lot, and, taken by itself, would establish beyond dispute that the intention was to convey in full property. But in view of the clause with which the deed concludes, it is manifest to our judgment that the parties intended a quitclaim only.

The clause last referred to is not in the *habendum* of the deed, nor is it in either of the covenants ; nor is the last clause superadded to the first as an alternative expression of the principal purpose, but is in its very terms an exposition of the sense in which the words making up the first clause are used by the parties. The second clause is but a *videlicet.* (*Bogy* v. *Shoah*, 13 Miss. 367 ; *Jackson* v. *Myers*, 3 John. 394.)

If contracting parties have power to define the words which they use, their definitions can never be attacked on the ground that they are repugnant to the words defined ; and if the agreed definitions are free from ambiguity, then the only rule necessary to be invoked is the one requiring contracts to be enforced according to the intention of the parties who made them. Two things distinct from each other are involved necessarily in the idea of repugnancy ; but the meaning of a

word can never be opposed to an authorized definition of it. The two must be identical; and therefore the possibility of repugnancy or conflict between them is in such case precluded. It is a solecism to say that a word means anything different from what it means.

The question then comes to this, have the parties to a written contract the right to set aside the general sense of the words which they use, and for the purposes of the contract to assign to them another and different meaning by convention? That they have both the right and the power to do this there can be no question. The meaning of language depends upon usage and varies with it. If parties should insert a clause in their contract to the effect that the language used by them should be taken in a certain sense which had become provincial, or in the meaning borne by it in a particular trade, and particularly if they should proceed to state the agreed definition in detail, and the definition turned out to be clear and unambiguous, the general meaning would have to give way; and it follows that it must be considered that parties have the power to innovate upon the general meaning of words at large free from all legal restrictions. If they see fit to agree that mile shall stand for league, or grant, bargain and sell for quitclaim, or even black for white, however we might marvel at the caprice, we could not question the power.

Second—It is insisted that the first covenant is a covenant of nonclaim, and that it operates by way of estoppel.

Though a covenant of nonclaim, still it operates only upon the interests conveyed, viz : the Colton grant or on any other interest that the grantor had or may have claimed to have at the date of the deed. (*Gee* v. *Moore,* 14 Cal. 472 ; *Kimball* v. *Semple,* 25 Cal. 441.)

Judgment reversed and new trial ordered.

Mr. Chief Justice CURREY expressed no opinion.