[S. F. Nos. 4390, 4411, and 4412.   Department One.—April 10, 1906.]

VIOLA PIERCY BURNETT, Respondent, v. EDWARD M. PIERCY, Appellant; and ANDREW J. PIERCY, THOMAS W. RIVERS, CHRISTOPHER C. RIVERS, EMMA C. McCOLGAN, and JAMES GOULD, Jr., Respondents.

PARTITION—APPEALS FROM INTERLOCUTORY DECREES—MOTION TO DIS-
MISS—FAILURE TO SERVE LIENHOLDER—DISPOSITION OF APPEALS.—
Appeals from interlocutory decrees in partition will not be dismissed
for failure to serve a lienholder with the notices of appeal where the
appeals can be determined by giving the parties thereto such relief
as between themselves as the record warrants and by providing in
the judgments on the appeals that they shall in no way affect the
rights or interest of such lienholder.

ID.—LIMITED ADMISSION OF SERVICE BY ATTORNEY FOR TWO PARTIES.—
Where the attorney for the lienholder was attorney for another party
and limited his admission of service of the notices of appeal to such
party, such admission cannot constitute service upon the lienholder.

ID.—WAIVER OF SERVICE OF NOTICE—VOLUNTARY APPEARANCE—STIPULA-
TION AS TO APPEALS.—The want of service of the notice of appeal
upon the lienholder may be waived, as in the case of non-service of
a summons, by a voluntary appearance; and it was waived by a
stipulation signed by all parties to the appeal, including the attorney
for the lienholder, reciting that the appeals were all perfected by
the appellant and that all of them may be determined upon the
transcript filed in one of them, which stipulation was filed in each
of the appeals.

ID.—TRUST-DEED—CONVEYANCE UNDER AGREED LIMITATIONS—SEPARATE
PROPERTY—JOINT DEED—LIFE ESTATE—EFFECT OF DEED BY WIFE.—
Where husband and wife executed a trust-deed under an existing
valid trust to reconvey, according to the limitations of a deed con-
temporaneously prepared and executed by the trustee, conveying part
of the land to the husband, his heirs and assigns, and the remainder
to the wife, her heirs and assigns, as separate property, to be held
and controlled by each separately during the life of each, subject
only to a power of mortgage and conveyance by their joint deed,
and in the absence thereof the estate in fee simple upon the death
of either was to vest in their children and in the heirs of any
deceased child by right of representation, the manifest intent of
the deed was to vest only a life estate in the wife, defeasible only
by a joint deed; and a conveyance in fee by the wife alone after
the husband's death to one of the children carried only an estate
during her life and could have no effect after her death.

ID.—CONSTRUCTION OF CONVEYANCE—"HEIRS AND ASSIGNS"—RESTRAINT
UPON ALIENATION—OTHER LIMITATIONS—INTENTION OF PARTIES.—
The rule of the common law embodied in section 711 of the Civil
Code, as to conditions restraining alienation of an estate in fee, is
not exclusively applicable to the conveyance by the trustee because
merely of the use of the words "heirs and assigns" in the con-
veyance made prior to the code, but other common-law principles
of interpretation embodied in that code are also to be considered;
and in construing the conveyance made by the trustee the trust-
deed and all of the conditions and limitations agreed to be embodied
in the conveyance must be considered and effect given to every
part thereof, so far as possible, to carry out the intention of the

parties; and, so construed, the intention appears to be to limit and qualify the effect and meaning of the granting clause, and the other limitations and conditions are not to be considered as repugnant to the grant, but as descriptive of the estate conveyed and in harmony with the grant when truly interpreted.

ID.—CREATION OF LIFE ESTATE.—Where the terms and limitations in the conveyance by the trustee accurately describe an estate for life and are inconsistent with an estate in fee, the intention is manifest to create it, and it is not essential to the creation thereof that the words ''life estate'' should be used or that it be expressly declared to be such.

ID.—CONSTRUCTION OF STATUTE.—Section 2 of the Act of 1855 (Stats. 1855, p. 171), providing that every conveyance of real property should ''pass all the estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant,'' is not to be construed as using the word ''grant'' as synonymous with the granting clause alone, but as referring to the entire instrument by which the grant is effected and as permitting the whole deed to be looked to in ascertaining whether or not the intent to convey an estate less than a fee ''is necessarily implied in the terms of the grant.''

ID.—NATURE OF REMAINDER IN FEE—VESTING OF FUTURE ESTATE.—It is not material whether the estate in remainder was vested or contingent during the life of the wife, it being in either case a legal conveyance of a future estate. The fact that it was subject to defeat by the joint power of disposition does not make it material to inquire where the estate in remainder was resting in the mean time, such power having never been exercised and the estate in remainder having become fully vested.

ID.—FEE NOT NECESSARY TO POWER OF DISPOSITION.—It was not necessary that a fee should be vested in the wife in order to the exercise of the joint power of disposition given to her and her husband. A power to dispose of the estate in fee may be given to a tenant for life, and may be created by deed as well as by will.

ID.—PARTIES IN PARTITION ALL ACTORS—ISSUE RAISED BY ANSWER—ACCOUNTING FOR MONEYS COLLECTED—FINDING AGAINST EVIDENCE.—The parties to an action of partition are all actors; and where a finding upon an issue raised by answer, that the grantee of the wife had collected rents for which he ought to account to his cotenants, is against the evidence set forth in the bill of exceptions, which recites that it contains all of the evidence, the judgment must be reversed for a new trial upon that issue.

APPEALS from interlocutory judgments of the Superior Court of the City and County of San Francisco in actions for partition. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Jackson Hatch, and W. F. Williamson, for Appellant.

H. V. Morehouse, J. E. Alexander, J. H. Meredith, Lloyd & Wood, and Thomas F. Barry, for Respondents.

SHAW, J.—In three separate actions for partition, entitled as above, interlocutory judgments of partition were entered, from each of which the defendant, Edward M. Piercy, appeals. By stipulation between all the respective parties, it has been agreed that the three appeals shall be heard and determined together, upon a single transcript. It appears from the stipulation that the decision of all of the cases depends on the same facts and affects the same parties.

The respondents present a motion to dismiss the appeals, the ground of the motion being that in each case there was a failure to serve the notice of appeal upon Christopher C. Rivers, one of the respondents, that he is a necessary party to any disposition of the case, and hence that this court has no jurisdiction of the appeals.

By the interlocutory judgment, it was declared that Viola Piercy Burnett, Edward M. Piercy, and Andrew J. Piercy were each the owner of an undivided one-third interest in the real property, and that the defendants Thomas W. Rivers and Christopher C. Rivers had a lien and charge against the interest of Andrew J. Piercy for $10,500, which was secured by a deed of trust of said lands theretofore executed by him to them. In his answer Edward M. Piercy alleged that he is the owner of the whole of the property and that neither of the other parties had any interest therein, and this is his contention upon the appeals. It is apparent, therefore, that, so far as the lien of Christopher C. Rivers, or his interest in the joint lien of himself and Thomas W. Rivers, is concerned, the court can make no valid disposition of the cases on appeal, unless it has in some way obtained jurisdiction of the cases as to him. The court can, however, notwithstanding such failure to secure jurisdiction as to Christopher C. Rivers, decide the cases with respect to the interests of the other parties, so far as it may be done without injuriously affecting his interests. If the appeals result in an affirmance of the

judgments, of course his interests will not be disturbed. If they result in a reversal, the cases must be remanded for new trial, or with directions to enter judgments in favor of Edward M. Piercy and dismissing the actions. In either of the latter contingencies, if jurisdiction does not exist as to Christopher C. Rivers, the former judgments will be final as to him, notwithstanding the reversal as to the others, and the result will be that the estate of Edward M. Piercy, as to the undivided one third of the land claimed by Andrew J. Piercy, will be subject to the interests of said Rivers under the trust-deed and to his interest in the lien secured thereby. No persons will be affected by this lien, except the appellant himself, and the respondent, James Gould, Jr., who claims a lien for six thousand dollars and interest, secured by a mortgage executed by Edward M. Piercy, purporting to mortgage the whole estate in said lands, and who was, by the judgments, declared to have a lien by virtue thereof upon a one-third interest only. The appellant cannot justly complain; for he will have himself brought the appeals to this court without making said Rivers a party thereto. He does not complain, and is not only content, but is insisting upon having his appeals decided, so far as it can be done with the parties before the court who are properly served. Gould cannot be injured by the appeals. He has not himself appealed, and he is satisfied with his lien as given by the interlocutory judgments, confining it to the undivided one third of the land. The only effect upon him of successful appeals by the present appellant, will be that his security will be extended to two thirds with a second lien upon the remaining third, whereas, if the appeals are dismissed he will have a lien upon one third only. The appeals could, therefore, be decided by giving to the parties thereto such relief as the record warrants, and providing in the judgments of this court on the appeals that they shall not in any wise affect the right or interest of Christopher C. Rivers. Under such circumstances an appeal will not be dismissed. The court, having jurisdiction of the parties properly before it, will hold the appeal in order to determine the rights of such parties with respect to each other. (*Williams* v. *Santa Clara Min. Assn.*, 66 Cal. 195, [5 Pac. 85].)

We are further of the opinion that this court has jurisdic-

tion of the appeals as to Christopher C. Rivers. It may be
conceded, as claimed by the respondents, that there was no
service upon him of the notice of the appeals. The notices
were not addressed to him, nor to his attorney,—that is to
say, neither his name nor that of his attorney appears in the
list of persons given in the introductory clause as those to
whom notice is given thereby. The admission of service
by Mr. Barry, who was attorney of record for him and also
for Thomas W. Rivers, was limited, by the statement follow-
ing the signature, to an admission for Thomas W. Rivers only.
Under the principle of the decision in *Estate of Pendergast*,
143 Cal. 138, [76 Pac. 962], and the cases there cited, this
does not constitute an admission of service by or for Chris-
topher C. Rivers, and hence the notices were ineffectual as to
him. But it has been said that "the notice of appeal by which
the adverse party is brought before this court corresponds to
the summons by which he is brought before the superior
court, . . . The notice itself, like the issuance of a summons,
may be waived. A voluntary appearance will be equivalent
to a personal service of the notice, but the mere waiver of
the service is insufficient. There must, in addition, be given
a notice of appearance, either in person or by attorney." In
the cases at bar there is a stipulation on file signed by "Thos.
F. Barry, attorney for defendants and respondents, Thomas
W. Rivers and Christopher C. Rivers." This stipulation
recites that "said Edward M. Piercy has duly perfected an
appeal to the supreme court of the state of California from
the interlocutory judgment" in one of the cases, particularly
describing it, and "has also perfected an appeal" from each
of the other two judgments, describing them, that all of them
were made upon the same facts and evidence, and "are to
be presented to said supreme court for review upon said
appeals upon records presenting precisely the same issues
. . . and upon precisely the same briefs . . . and oral argu-
ments." It was thereupon agreed therein that the appellant
should file his record on appeal in one of the cases, and need
not file any record on appeal in the other two cases, and that
the appeals in the other two cases "may be heard and de-
termined in the supreme court upon the transcript so to be
filed" by the appellant in the first-mentioned case, that the

briefs and oral arguments in the said first-mentioned case should be considered by all the parties to the other two actions, and by the supreme court, as briefs and arguments in the other two cases, and that "whatever order or judgment the supreme court shall make in said action in which said printed transcript is to be filed shall be made in the other two of said actions." This stipulation was filed in this court in each of the three appeals, and in two of them constitutes the only record on appeal. In *Valley Lumber Co.* **v.** *Struck,* 146 Cal. 268, [80 Pac. 405], there was a similar stipulation, and a similar objection that one of the respondents had not been served with notice of appeal. It was held that the stipulation constituted an appearance to the appeal sufficient to give the supreme court jurisdiction thereof. In *Carey* v. *Brown,* 58 Cal. 180, there was a stipulation that "the appeal was duly perfected," and it was held that this was an admission that the notice of appeal had been filed, and that it could not be contradicted for the purpose of dismissing the appeal. In this case the stipulation of Christopher C. Rivers is that the appeals have been "perfected." This could not be true unless a notice of appeal had been duly served on him. Following *Carey* v. *Brown,* 58 Cal. 180, we hold that this is an admission of the due service of a properly addressed notice of appeal upon all the parties signing the stipulation. On the authority of *Valley Lumber Co.* v. *Struck,* 146 Cal. 268, [80 Pac. 405], we may also say that the stipulation constitutes an appearance to each appeal by all the respondents, and precludes a dismissal thereof for want of service of notice upon any of them. We are of the opinion that this court has jurisdiction of the appeals as to Christopher C. Rivers, and that the appeals should not be dismissed. We now come to the merits of the case.

In November, 1867, the title to the lands in controversy was vested in John C. Piercy and Mary Piercy, his wife. The title of the respective parties to this action depends on the construction and legal effect of two deeds for said lands, executed on November 16, 1867, one made by John C. Piercy and Mary Piercy to Joseph B. Crockett, and the other a reconveyance by Crockett to John C. and Mary Piercy. The deed to Crockett was in the usual form of a grant, bargain,

and sale deed, except that it contained the following clause: "In trust, nevertheless, and for the purpose only, of conveying the above described premises by a deed bearing even date herewith, and to be executed immediately by said party of the second part to said John C. Piercy and Mary Piercy, according to the terms, conditions and limitations in said deed contained, which deed is already prepared to be executed." No other consideration was stated in the deed.

The reconveyance by Crockett to the Piercys, referred to in the foregoing trust clause, was executed contemporaneously with the first deed, and in execution of the trust therein declared. It styled Crockett as party of the first part, John C. Piercy as party of the second part, and Mary Piercy as the party of the third part. For convenience we will designate them by name. The material parts of this reconveyance, omitting the description of lands, were as follows:—

"The said [Crockett] for and in consideration of his friendship for the said [John C. and Mary Piercy], doth by these presents give, grant, convey and confirm unto John C. Piercy, his heirs and assigns, on the terms and subject to the conditions and limitations hereinafter expressed, the following described real estate." (Here follow descriptions of four tracts of land not here involved.)

"And the said [Crockett] in consideration of his friendship for the said Mary Piercy, does hereby give, grant, convey and confirm unto the said Mary Piercy, her heirs and assigns for her sole and separate use, free from the debts or control of her husband." (Here are inserted descriptions of three parcels of land, being the lands in controversy.)

"Each of the said parties of the second and third parts, being entitled respectively under this conveyance to the property heretofore conveyed to them severally as his or her separate property, and not as common property of the marriage, and the premises hereby conveyed to the said Mary Piercy to be her sole and separate estate free from the debts or control of her husband, except as herein otherwise provided. And this conveyance is upon the further condition that the said parties of the second and third parts respectively shall each have the exclusive right for and during his or her natural lifetime to manage and control and to receive the rents, profits

and income from the property hereinbefore conveyed to them severally, that is to say, each shall manage, control and receive the rents, profits and income from the property herein conveyed to him or her severally, and neither shall interfere with the other in the management, control or enjoyment of the property hereby conveyed to the other, nor in the receipt or disposition of the rents, profits or income therefrom, except as herein otherwise provided, and out of the said rents, incomes and profits, each of the said parties respectively shall pay all taxes and assessments, which shall be levied on the property herein conveyed to him or her severally, and shall keep said property in repair.'' (Here follow provisions requiring John C. Piercy to pay certain sums to Mary Piercy within certain periods.)

''And this conveyance is upon the further condition that neither one of the said parties of the second or third parts shall sell, convey, mortgage or in anywise encumber, during their joint lives, the said property or any part thereof, or erect any new buildings thereon, without the consent in writing of the other.

''But nothing herein contained shall be so construed as to prohibit or prevent the said parties of the second and third parts from at any time conveying, mortgaging or otherwise disposing of the said property or any part thereof by an instrument or instruments in writing, duly executed, acknowledged and delivered by them jointly, nor from building upon and improving said property or any part thereof, provided they both consent in writing thereto.

''But if the said parties of the second and third parts shall not by an instrument or instruments in writing duly executed, acknowledged and delivered by them jointly during their joint lives, convey or dispose of the said real property, such parts or portions thereof as shall on the death of either of said parties not have been thus conveyed or disposed of, shall vest in and become the property in fee simple of the children of the marriage of the said parties of the second and third parts and the lawful issue of such of the said children as shall have died in the mean time, such issue taking *per stirpes* and not *per capita,* it being the true intent and meaning of this instrument that nothing herein contained shall restrict or limit or

impair the right of the said parties of the second and third parts to convey, mortgage, encumber or dispose of the said property, or any part thereof, by an instrument or instruments in writing duly executed, acknowledged and delivered by them jointly, nor shall anything herein contained be construed to restrict, limit or impair the right of each of said parties of the second and third parts to manage, control and receive the rents and income from the property herein conveyed to him or her respectively during his or her lifetime, notwithstanding the death of the other, it being the true intent and meaning hereof, that on the death of either of said parties such portion of the property hereby conveyed to the person so dying as shall not before then have been conveyed or disposed of by their joint act as hereinbefore provided shall vest in the children of their said marriage as hereinbefore stated, the survivor retaining the right to manage, control, and receive the rents and income from the property hereby conveyed to such survivor during his or her natural life, and at his or her death to vest in the children of said marriage as hereinbefore provided.''

Upon this deed the following writing, signed by John C. and Mary Piercy, was indorsed, and the execution thereof duly acknowledged before a notary public: ''The foregoing deed has been executed and delivered in pursuance of the trust created in a deed from us to said J. B. Crockett of even date, and is the same deed which is therein referred to as then prepared to be executed Nov. 16, 1867.''

John C. Piercy died in 1885. Mary Piercy died intestate on June 9, 1903. At the date of her death the only surviving children of the marriage were the two defendants, Edward M. and Andrew J. Piercy. The plaintiff was the daughter of Samuel W. Piercy, a deceased son of the marriage, and these three were the only surviving descendants. John C. and Mary Piercy did not jointly convey or otherwise dispose of any of the property. After the death of John C. Piercy, Mary Piercy executed to Edward M. Piercy a deed purporting to convey to him all of her right, title and interest in the land. It is conceded that if the effect of the deed from Crockett was to vest in Mary Piercy an estate for her life only, in the lands, with the remainder to the children of the marriage living at

her death, and the descendants of such as were then deceased, and with no power in her to dispose of such remainder except by the joint conveyance of herself and John C. Piercy, then the deed made by her to Edward M. Piercy was of no effect after her death, and the judgment of the superior court, holding that Edward M. Piercy, Andrew J. Piercy, and Viola Piercy Burnett were each entitled to a one-third interest in the land was correct. We are of the opinion that this was the true legal effect of the transaction in question.

The contention of the appellant is that, as the Crockett deed was made in 1867, prior to the adoption of the codes, it must be interpreted according to the rules of the common law and the statutes then in force, and that the rules of interpretation established by the Civil Code are not applicable, except so far as they restate those of the common law; that the rule which must control the effect of this deed is that of the common law, re-enacted in section 711 of the Civil Code, to the effect that conditions restraining alienation, where repugnant to the interest created by the granting clause, are void; that the grant "to Mary Piercy, her heirs and assigns," as expressed in the deed, created in her an estate in fee, including the absolute power of alienation, and that the conditions and limitations restricting her power to convey the land are repugnant to the existence in her of a title in fee; that by the operation of this rule they must be considered void and the deed construed to vest in her an unqualified estate in fee simple, and that her deed transferred the same to Edward M. Piercy. Examples of the application of this rule occur in *Murray* v. *Green,* 64 Cal. 363, [28 Pac. 118], where, after words constituting a grant in fee simple, a condition was inserted that the grantee should not convey the lands without the consent of the grantor, and the condition was held void, and also in *Eldridge* v. *See Yup Co.,* 17 Cal. 51, where a limitation upon the use was held not to be effective as against a fee conveyed by the previous granting clause.

It may be freely conceded that in proper cases, this rule existed in California in 1867. But it is not correct to say that the rules for the interpretation of contracts, laid down in the Civil Code, are innovations upon the common law and are not applicable to deeds executed before the adoption of

that code. That deeds are to be construed according to the laws in force at the time they were executed, is true. But these rules of the Civil Code, for the most part, are parts of the common law previously existing, and are applicable to deeds and other contracts executed prior to the adoption of the codes as fully as those executed since. We do not think the rule stated in section 711 of the Civil Code controls the construction of the instrument in question. There are other rules which control the effect of the transaction involved here and prevent the operation of the rule stated in that section. Where two or more written instruments are executed contemporaneously, with reference to each other, for the purpose of attaining a preconceived object, they must all be construed together, and effect given if possible to the purpose intended to be accomplished. (Civ. Code, sec. 1642; 13 Cyc. p. 603; 2 Devlin on Deeds, sec. 845.) All parts of a deed must be applied so as to give effect and meaning to every part, if possible, each clause being considered separately and being governed by the intent deducible from a fair consideration of the entire instrument. (Civ. Code, sec. 1641; 13 Cyc. pp. 604, 605; 2 Devlin on Deeds, secs. 836, 840.) The primary object of all interpretation is to ascertain and carry out the intention of the parties. (Civ. Code, sec. 1636; *Walsh* v. *Hill,* 38 Cal. 487; 2 Devlin on Deeds, sec. 835; 13 Cyc. p. 601.) All the rules of interpretation must be considered and each given its proper weight, where necessary, in order to arrive at the true effect of the instrument. (2 Devlin on Deeds, sec. 840). There are qualifications to the effect that the intention of the parties must be lawful, and that the construction must not be contrary to some positive rule of law. (2 Devlin on Deeds, sec. 836; 13 Cyc. 601; Civ. Code, sec. 1636.)

It is a necessary conclusion from these principles of construction that when, upon a fair consideration of all the parts of a deed, and of the contemporaneous instruments constituting parts of the same transaction, it appears that it was the intention, by other expressions in the deed, to limit and qualify the effect and meaning of the granting clause, so that it should not operate to transfer the entire estate, but only a limited estate, the rule that repugnant conditions restraining alienation are void, does not apply, unless the conditions refer

to the limited estate actually granted. In such cases the other provisions in the deed operate on and affect its true meaning, the granting clause is to be taken in the limited sense which the entire instrument shows it was intended to have, and the limitations and conditions relating to the fee are not to be considered as repugnant to the grant, but as descriptive of the estate conveyed, and in harmony with the grant when truly interpreted. Thus, in *Morrison* v. *Wilson,* 30 Cal. 347, the granting clause, purporting to grant, bargain, and sell, and thereby showing an intention ''to convey in full property,'' was held to be modified and explained by a subsequent clause declaring the intention to make a quitclaim only. And in *Montgomery* v. *Sturdivant,* 41 Cal. 295, the granting clause alone would have conveyed a fee simple, but it was held to be explained and modified by the language of the *habendum,* to such an extent that the effect of the entire deed was to convey a life estate only. This rule prevailed at common law (13 Cyc. 643, 669; 1 Devlin on Deeds, secs. 214, 215, 215a), and it is also made a part of the code. (Civ. Code, sec. 1105.) It was applied in *Barnett* v. *Barnett,* 104 Cal. 298, [37 Pac. 1049]. In that case a grant purporting to convey a fee was held to be limited to a life estate by the language of the *habendum.* The case arose after the enactment of the Civil Code, but we do not understand that it was decided on the theory that the code establishes a rule on this subject different from that which prevailed before its adoption. *Morrison* v. *Wilson,* 30 Cal. 347, and *Montgomery* v. *Sturdivant,* 41 Cal. 295, were each decided upon the law as it stood prior to the code and apply substantially the same doctrine.

These cases are not antagonistic to the principle of *Murray* v. *Green,* 64 Cal. 363, [28 Pac. 118]; and section 711 of the Civil Code. Where, as in that case, from the whole of the instrument, the intent is clear to convey an unqualified fee, the attempt to put restrictions upon its alienation will be held void under the rule of that case and that section. (See 4 Pac. Coast Law J. 215, for a full statement of the terms of that deed.) But conditions which would be void as restrictions upon the alienation of a fee conveyed by the deed, may contain expressions, which show that no such fee is granted, and, in construing a deed, such language must be given due weight.

Where the intent to be gathered from the deed as a whole, including the otherwise void conditions, is that a lesser estate was to be conveyed, then such intention must prevail, and, as the effect will be that no fee is conveyed by the deed, there will be nothing upon which the restrictions upon the alienation of the fee can operate.

Coming now to the deed in question, we find it to constitute one part of an entire transaction comprised in three separate writings relating to the same matters between the same parties, all of which must be considered and given due weight in determining the intent and effect of the deed. The trust clause in the deed from the Piercys to Crockett shows that, although Crockett was given a fee, yet that he received it upon a certain trust to convey, and, consequently, that he was powerless to convey, except in accordance with the terms of the trust. Such trusts were at that time permitted by law. By this trust clause the deed to be executed by Crockett was referred to, and all its conditions and limitations were thereby incorporated into, and made parts of, the terms of the trust upon which Crockett held the land. Any attempt by him to convey a fee contrary to the terms of the trust would therefore have been ineffectual and void, to the extent of such conflict. By the writing indorsed upon the Crockett deed and signed by them, the Piercys affirmed that deed as a performance of the trust, and again signified their understanding and intention that the estate thereby conveyed to them was limited and qualified as stated in the provisions of the deed. In view of these circumstances showing the importance attached to the limitations following the granting clause, it is obvious that, whatever would be the effect of the rule contended for by the appellant upon such limitations in ordinary cases, it has no just application to this case, where the contemporaneous instruments and the language of the deed itself show that the chief purpose of the transaction was to vest an estate in the grantors subject to and qualified by those conditions and limitations. In order to carry out the manifest intention of the parties, it is necessary that the conditions and limitations should prevail over and qualify the granting clause.

When these qualifying clauses are considered, the intention to vest in Mary Piercy a life estate only, with a limited power

of disposition over the remainder in fee, and nothing more, is made plain. She was to have the exclusive right during her lifetime to manage, control, and receive the income from the property; she was to pay all accruing taxes and make repairs out of such income; she was not to convey or encumber it, except by the joint writing of herself and John C. Piercy; and, finally, it was declared to be the true intent and meaning of the deed that, upon her death, if the property had not been previously disposed of by their joint instrument, as provided in the power of disposition therein given, then it was to vest in the children of their marriage then living, and the lawful issue of such of said children as had died in the mean time, and the survivor of the two grantees was to retain "the right to manage, control and receive the rents and income from the property hereby conveyed to such survivor, during his or her natural life, and at his or her death to vest in the children of said marriage," as above stated. These provisions all refer to the character of the estate to be vested in Mary Piercy by, the deed. They accurately describe an estate for her life, and are inconsistent with the idea that she was to have a fee. It is not an essential requisite to the giving of a life estate, that it be expressly declared to be such, nor that the term "life estate" shall be used. The intention can as well be manifested by other words, referring to the estate conveyed and describing its characteristics, and if by that means the intention to vest a life estate, only, is shown, it will be as effectual as if it were expressly so stated. The intention of the parties, as manifested by these instruments, that she should have nothing more than the enjoyment of the use of the property during her life, if the joint power was not exercised, is too plain for controversy. To give the deeds a contrary effect by declaring these provisions void, would produce a result which the parties manifestly intended to prevent and give the deed exactly the opposite effect to that intended. Such forced constructions should not be indulged in, unless made necessary by some positive rule of law. It is not necessary to do so here. The intention declared by the language of the parts of the deeds following the description are descriptive of the estate conveyed, and must prevail over the general language of the granting clause and the estate granted is to be limited according to the effect of these conditions and limitations.

It is apparent from these special provisions that Mary Piercy had no power over the fee after the death of John C. Piercy. The power to dispose of the fee by their joint act ceased to exist upon the death of one of them, and thereafter the survivor was possessed of a simple life estate, without further power of disposition of the fee. The deed of Mary Piercy, made after the death of John C. Piercy, whereby she conveyed all her right, title, and interest to Edward M. Piercy, was therefore ineffectual upon the remainder, and conveyed to him only an estate during her life. Edward M. Piercy therefore stands in the same class with the other descendants, and takes only his pro rata share of the land,—that is to say, an undivided one third thereof.

Section 2 of the act of 1855 (Stats. 1855, p. 171), which was in force when this deed was executed, provided that every conveyance of real property should "pass all the estate of the grantor, unless the intent to pass a less estate shall appear by express terms, or be necessarily implied in the terms of the grant.". It is contended that the word "grant" as here used refers to the words used in the granting clause of the deed, and that when the intent to convey a less estate cannot be implied from the granting clause, the other portions of the deed cannot be resorted to for the purpose of qualifying its meaning. We do not think the word "grant" in that statute was used in the narrow sense here claimed. It refers not to the granting clause alone but to the entire instrument by which the grant is effected, and, consequently, the whole deed may be looked to in order to ascertain whether or not the intent to convey to any party thereto an estate less than the fee is "necessarily implied from the terms of the grant."

The objection that the Crockett deed could not be operative to convey the entire estate, unless it is construed to vest the fee in Mary Piercy, and that to construe it otherwise would leave the remainder in abeyance, or still vested in Crockett, is not maintainable. We do not consider it important to determine whether the estate in remainder thus disposed of by the deed was vested or contingent during the life of Mary Piercy. Whether the one or the other, it was, under the common law, a legal conveyance of a future estate. (Gray on Perpetuities, secs. 108, 109, 110, 112, 113.) The intent is clear that the estate in remainder after her death was to vest in the children of the

marriage living at her death, and the issue of such children as should have died in the mean time taking *per stirpes* and not *per capita*, subject to defeat by the exercise of the joint power of disposition. Inasmuch as the question bears only upon the construction of the deed, and as the events upon which this remainder was to vest and by which the persons in whom it was to vest were to be determined have all happened, so that the estate is now safely vested, the precise place where this fee in remainder has been resting in the mean time need not concern us.

There is no merit in the proposition that it is necessary that the fee should be conveyed to Mary Piercy in order that she should be enabled, with the concurrence of John C. Piercy, to convey a fee. The vesting of a fee in the person to whom such a power of disposition of a remainder in fee is given, is not necessary to an effectual exercise of the power. (2 Washburn on Real Property, 6th ed., secs. 1659, 1661; 22 Am. & Eng. Ency. of Law, 1095, 1097.) "A power to dispose of the land in fee may be and often is given to a tenant for life." (*Sedgwick* v. *Laflin*, 92 Mass. 432.) Such powers can be created by deed as well as by will. (2 Washburn on Real Property, 6th ed., sec. 1678.)

There is a finding that Edward M. Piercy has heretofore collected rents of the property and has not accounted for the same, and there is a clause in the interlocutory decree requiring him to render an account. The appellant insists that the finding is not supported by any evidence, and that in consequence thereof the judgment must be to that extent reversed. This contention is well founded. The answers of Andrew J. Piercy allege that Edward M. Piercy has received rents from the property for which he has not accounted, and pray that he be required to render an account. In an action for partition all the parties owning an interest in the property are actors, and this allegation is a sufficient foundation upon which to base a finding and judgment for an accounting. The bill of exceptions recites that it contains all the evidence, and upon an examination we find no evidence whatever to the effect that Edward M. Piercy has received any rents from the property, or that he has been in possession of more than his undivided interest, as declared in the interlocutory judgment.

The findings and judgments for an accounting are therefore unsupported by the evidence. It is not necessary, however, that the entire judgment be reversed in each case, nor that there be new trials upon the other issues. The findings and judgments of the court below defining the interests of the parties and directing a partition and a sale need not be disturbed. If, in the several cases, applications had been made to the court below for new trials or modifications of the judgments by striking out the parts relating to an accounting, doubtless they would have been granted. This feature of the cases is unimportant and obviously was not the occasion of the appeals. We think the appellant should not recover the costs of his appeals on account of these partial reversals.

The part of the judgment in each of the cases directing Edward M. Piercy to render an account is reversed, without costs to respondents, and the causes are remanded for a new trial of the issues relating to such accounting. The remaining parts of the judgment in each of the cases, declaring the interests of the respective parties and directing a partition and sale of the property, are affirmed and each cause is remanded for further proceedings to carry out the partition in accordance with the interlocutory judgment.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.