[S. F. No. 7593. Department One.—December 5, 1917.]

## L. F. SHEAN et al., Appellants, v. A. J. WEEKS et al., Respondents.

LEASE—COVENANT NOT TO PERMIT COMPETITIVE BUSINESS — BREACH— INJUNCTION—EVIDENCE.—In an action by lessees engaged in the business of "general confectionists," and serving light luncheons as a part of that business, against their lessor to enjoin the breach of a covenant not to permit, under any other lease or letting of any other part of the same building, the carrying on of any business involving the sale or handling of any merchandise of the same character as that sold or handled by the lessees, evidence found insufficient

to establish the proposition that, by the general usage of the trade, the term "general confectionist," as used in the covenant, had acquired a meaning broad enough to warrant an injunction against carrying on a restaurant and cafeteria in the building.

ID.—CONTRACT—CONSTRUCTION—MEANING OF WORDS—GENERAL USAGE. In construing contracts, the ordinary meaning of words cannot be changed, except by proof of general usage by those engaged in the particular trade, or by proof that the parties to the contract used them in the special sense contended for.

APPEAL from a judgment of the Superior Court of Alameda County. M. T. Farmer, Judge.

The facts are stated in the opinion of the court.

Thomas H. Laine, Lawrence M. Phillips, and' Dixon L. Phillips, for Appellants.

Elliott Johnson, and R. W. Palmer, for Respondents.

SHAW, J.—The plaintiffs appeal from a judgment in favor of the defendants. The record is presented in typewriting, as provided in section 953a of the Code of Civil Procedure.

The action was begun on March 6, 1915, to enjoin the breach by the defendants of a covenant of a lease executed by the defendant Weeks to the plaintiffs, on September 1, 1914, the defendants other than Weeks being the lessees of Weeks under a subsequent lease.

The lease to the plaintiffs was for a portion of the ground floor of the building formerly known as Berkeley Inn, and included a space fronting 37 feet on Telegraph Avenue and 136 feet on Bancroft Way. The covenant which it is alleged was broken is as follows:

"It is understood that the lessees are at present carrying on in the store space fronting on Telegraph Avenue the business of general confectionists and are engaged in the manufacture and sale of candy, ice-cream, light lunches, soda water, etc., and the lessor agrees that he will not during the term of this lease, carry on or conduct or permit to be carried on or conducted, under any lease or letting, upon any portion of the premises owned by him at said corner of Bancroft Way and Telegraph Avenue, any business which shall involve the selling or handling or manufacturing of merchandise of

CLXXVI Cal.—38

the same character as that sold or handled or manufactured by the lessees, their assigns, or subtenants in the course of their business as general confectionists.''

On December 16, 1914, Weeks leased to the defendants Elbert M. Vail and Henry R. Vail all of the premises referred to in the aforesaid covenant, except the part thereof previously leased as aforesaid to the plaintiffs. Thereafter said lessees and the defendant McLeod established a restaurant and a cafeteria on parts of the premises so leased to them by Weeks.

The complaint alleges that ''a large and important part of plaintiffs' business, so conducted, consists of the serving of hot and cold lunches, meals and food, to the public, to be eaten at tables provided by plaintiff on the premises, and also to be carried away in bulk by the purchasers thereof. That such lunches, meals, and food are served by plaintiffs in said establishment on the demised premises, continuously from 8 o'clock A. M. until midnight each day,'' and that the said Vail and others, lessees of Weeks, are carrying on in another part of the premises ''a restaurant, cafe, cafeteria, eating-house and lunch-room, in which lunches, meals, or food are served to the patrons thereof at tables therein provided, or are carried away in bulk by said patrons.'' The room in which the said defendants carried on said business was in a portion of the premises owned by Weeks, referred to in the aforesaid covenant. It is claimed by the plaintiffs that the business so carried on by Vail and others is of the same character as the business of plaintiffs as ''general confectionists,'' and that it conflicts therewith, and takes from the plaintiffs a large and valuable portion of their custom.

The court found ''that there is no substantial conflict in the business allowed to be carried on by the defendant Weeks on the premises described in the complaint, to wit, the hotel and restaurant business, and the cafeteria business, with the business being carried on by plaintiffs, namely, the general confectionery business.''

The appellants contend that this finding is contrary to the evidence. The daily menu of the plaintiffs' establishment included such articles as eastern oysters, roast sirloin of beef, braised lamb, chicken pie, meat roll, veal fricassee, chipped beef in cream, home-made corn beef hash, and Boston baked beans. It is not denied that these dishes are usually

served only in restaurants and hotels. The plaintiffs say that the words "candy, ice-cream, light lunches, soda water, etc.," in the covenant "were merely intended as a brief description of the general confectionery business to be carried on by the lessees, and the true method of determining the rights of the parties is to arrive at the ordinary business significance of the term 'general confectioner,' as understood by men engaged in the same business." This necessarily involves the proposition that the term "general confectionist" used in the covenant has, by the general usage of the trade, acquired a meaning broad enough to include the business of serving such articles of food as those above mentioned, in connection with other lighter foods contained in the plaintiffs' daily bill of fare. The evidence does not establish this proposition. One witness testified that he was manager of an establishment in Oakland which he called a confectionery and refused to call a restaurant, but at which, in addition to confections, there were served many kinds of substantial foods similar to those served by the plaintiffs as above mentioned, and embracing many of the dishes usually served in ordinary restaurants. He further testified that at the present time this kind of business was ordinarily handled by such establishments as his own; that lately almost every confectioner was doing it, and that it was customary for general confectioners such as himself to handle what is "called the light lunch feature of the business," and to sell hot lunches in the middle of the day, and salads at all hours. There was no other evidence given in support of the plaintiffs' theory. This testimony does not establish the fact that the term "general confectioner" had by general trade usage acquired a meaning broad enough to include the carrying on of a restaurant such as that conducted by himself or by the plaintiffs. It tends to show that many confectioners were extending their business so as to include a restaurant as a part thereof, but it does not prove that they spoke of that branch as a confectionery. On the other hand, there was testimony to the effect that in twelve confectioneries carried on in Berkeley, Oakland, and San Francisco, nothing more substantial in the way of eatables was served to customers than sandwiches and salads, except in one, which added hot beans to the menu. The evidence indicates that these twelve comprised the greater part of the principal confectioners in the three cities named. This testimony would

justify the conclusion that it was not the general usage of the trade to carry on a restaurant in connection with the confectionery, although it was done by many persons engaged in that business, and it tends to disprove the claim that the term "general confectioner" had acquired the meaning upon which the plaintiffs insist. The ordinary meaning of words cannot be changed except by proof of general usage by those engaged in the particular trade, or by proof that the parties to the contract used them in the special sense contended for. The evidence falls far short of these requirements.

From all the evidence we think the court was warranted in holding that the covenant did not authorize an injunction against the carrying on of a restaurant or cafeteria in other parts of the building, and that the finding is correct so far as that point is involved. Plaintiffs' counsel do not claim relief for any other breach. They put their case, as the complaint indicates, wholly on the theory that the covenant gave them the exclusive right to carry on a restaurant in the building, and restricted the use of the other parts thereof to other purposes. No point is made upon the proposition that the restaurant and cafeteria serve "light lunches" contrary to the express terms of the covenant. The plaintiff Shean testified that it was not the light lunch feature that the plaintiffs objected to, but that what they wished to prevent was the selling of meals in the rival places. We may therefore assume that the violation of the "light lunch" restriction was not urged in the court below as ground for the injunction sought, and that the breach of that part of the covenant was not considered by the plaintiffs as of substantial importance, but, for the purposes of the case, was waived by them.

This conclusion renders it unnecessary to consider the other points urged in the brief of the appellants. If the business carried on by the defendants did not substantially conflict, in the manner complained of, with that for which the plaintiffs' premises were leased to them, as embraced in the covenant aforesaid, plaintiffs are not entitled to an injunction.

The judgment is affirmed.

Sloss, J., and Angellotti, C. J., concurred.