[Civ. No. 7839. Second Appellate District, Division One.—January 29, 1934.]

J. R. HOLLIDAY, Respondent, v. A. A. PORTER, Appellant.

Blackstock & Rogers, Charles F. Blackstock and Merle J. Rogers for Appellant.

Harry William Elliott for Respondent.

CONREY, P. J.—Plaintiff and the defendant entered into a written contract whereby the plaintiff agreed to drill a well for water on certain described land of the defendant, and the defendant agreed to pay therefor at a prescribed rate measured by the number of miner's inches of water produced from the well. A well was drilled to the depth of approximately eight hundred forty feet, from which ninety inches of water was produced. Defendant having refused payment, the plaintiff brought this action, which was tried by jury and resulted in verdict and judgment in favor of plaintiff. Defendant appeals from the judgment.

Among the terms of the contract which describes the obligations assumed by the contractor, we find that the contractor agreed "at his sole cost and expense, to furnish all necessary drilling equipment of whatever nature; all material such as casing, gravel, etc.; all labor, and to drill in a workmanlike manner to a depth to be determined by him, and to perforate, and blow the well with compressed air, and to bring the well in, and leave it absolutely clean and ready for a pump". The present controversy arose out of certain contentions of the defendant concerning the meaning of the above-quoted paragraph. The position taken by appellant is indicated by the statement of his counsel in

their brief that "a well was drilled and about ninety miner's inches of water was produced, but the water was so highly impregnated with sand that it was not available to the appellant for purposes of irrigation or for any purpose at all".

The nature of the defense is shown in the answer, wherein the defendant alleged "that at the time the said agreement referred to in plaintiff's complaint herein was executed, it was thoroughly understood and agreed between the parties thereto that the expression 'and leave it absolutely clean and ready for the pump' meant that the plaintiff would leave the well and the water produced therefrom absolutely free of sand and clean and ready for the pump, and at the time said agreement was entered into each of the parties thereto, that is the plaintiff and defendant herein, stated each to the other that the said expression 'and leave it absolutely clean and ready for a pump' was intended to mean and did mean that plaintiff would leave said well and the water produced therefrom absolutely clean, free of sand and ready for the pump, and at the time said agreement was executed the following expression contained therein 'and leave it absolutely clean and ready for the pump' was by each of the parties thereto interpreted to mean and in fact did mean that the plaintiff would leave the well and water produced therefrom absolutely clean, free of sand and ready for the pump. And plaintiff alleges that the said well has never at any time been clean and/or ready for a pump; alleges that the water produced from said well has never at any time been clean and/or free of sand, but on the contrary said well has never been clean and said water has never been free of sand, but has been heavily impregnated with sand, in fact, so heavily impregnated with sand that it has never been ready for a pump and that it is not practicable to pump water from said well with any kind of pump for irrigation purposes or for any purpose at all".

Appellant's principal assignments of error relate to the rulings of the court whereby the defendant was prevented from introducing testimony of witnesses to prove that in their oral negotiations prior to the making of the written contract the plaintiff represented to the defendant "that he could and would put down a gravel-packed well for the defendant which would produce a large quantity of water,

and which would be free and clear of sand, and in which well the water would be entirely clear and usable for domestic use and irrigation purposes''. The plaintiff objected to this testimony on the ground, among others, that it was an attempt to vary a written instrument by parol testimony. The objection was sustained and the offered testimony excluded. Appellant insists that he should have been permitted to introduce the evidence which was thus excluded. If the court erred in its ruling as to this matter, the judgment should be reversed. If the court did not err in that ruling, the other assignments of error will not be of sufficient importance to require further consideration.

It is claimed by appellant that under the provisions of sections 1856, 1857, 1858 and 1860 of the Code of Civil Procedure, he was entitled to introduce evidence in accordance with his offer; and particularly, testimony showing what was said in conversations between plaintiff and defendant before the contract was written. Appellant admitted that he was not seeking to establish any mistake in the writing or any fraud in the transaction. He himself relied upon the written agreement, but contended that the phrase ''bring the well in and leave it absolutely clean and ready for a pump'' was by the parties intended to mean that the plaintiff would leave the well *and the water produced therefrom* absolutely clean and ready for the pump.

''The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement must be construed accordingly.'' (Code Civ. Proc., sec. 1861.) ▮ If appellant had offered evidence tending to prove that the words used in the contract, as to this particular matter, ''had a local, technical or peculiar signification'', it then would have been appropriate to introduce evidence showing that the words were so used and understood in the particular instance. But no attempt was made to introduce evidence to establish such special signification. Without evidence that there was in existence a local, technical or other peculiar signification of the kind relied upon, the terms of the writing were incapable of the interpretation sought to be put upon them by appellant,

and he had no right to vary their meaning by oral evidence of the conversations between the parties. For the terms of the writing, "used in their primary and general acceptation", that is to say, according to their plain, and simple meaning, referred solely to the condition in which the well should be left by the contractor, and did not include the condition or quality of the water to be produced by the well. The evidence without conflict shows that after the drilling had been completed, the mud and other debris therein were removed and the well itself was clean and ready for the pump. The only way left for appellant to avoid the effect of this evidence was to show, if he could do so by competent evidence, that under the terms of the contract plaintiff was obligated to see to it that the water as it came into the well was also clean and fit for use. But the contract itself carried no such obligation, and the evidence to which we have referred, which appellant offered to produce and which the court excluded, was not competent or admissible evidence in relation to the matter at issue. This brings us to the conclusion that the rulings of the court were not erroneous.

For the foregoing reasons, the judgment is affirmed.

York, J., concurred.

HOUSER, J., Dissenting.—I dissent. The pivotal question presented is whether the provision in the contract that was entered into by the parties thereto, that the person who drilled the well would "bring the well in and leave it clean and ready for the pump", was of such a nature that the introduction of evidence to determine the intention of the parties with reference to the use of such expression would be in contravention of the general rule which forbids the alteration or modification by parol evidence of a written contract. (Sec. 1856, Code Civ. Proc.; sec. 1625, Civ. Code.)

As a pointed suggestion that the language employed by the parties to the contract was not entirely clear, at an early stage on the trial of the action the remark made by the judge of the trial court with reference thereto is indicative. He said:

"The Court: Of course there might be an ambiguity there to the ordinary person as to the meaning of leaving it absolutely clean and ready for the pump. Now, I myself don't know what that means. What does it mean? I don't know.

"Mr. Elliott (Attorney for Plaintiff): Well, perhaps the evidence would make it clear what it does mean.

"The Court: Then parol evidence would be admissible, if my theory is correct on that. . . . "

But even assuming that the language in question in itself was free from ambiguity, nevertheless if it appear that it was used or understood with a "peculiar signification", the agreement entered into by the interested parties thereto "must be construed accordingly". Section 1861 of the Code of Civil Procedure provides as follows: "The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise *peculiar* signification, and were *so used and understood* in the particular instance, *in which case the agreement must be construed accordingly.*"

It should be clear that in entering into a written agreement, the parties thereto are under no legal obligation to attach either any particular, or generally accepted significance to any part thereof; but that to the contrary, the parties are privileged to attach such meaning either to a word, a phrase, or any clause or provision in their agreement, as they may agree upon. In other words, in their convention, the parties to any agreement may either adopt, or decline to adopt, either the dictionary meaning, or the generally accepted meaning, of any word which they may use in defining their several rights, duties, or obligations; and in a construction of the terms of an agreement, if it appear that in "the terms of a writing" the parties thereto have departed from the "primary and general acceptation" of words therein used by them, and have given them "peculiar signification", the statute is plain in its declaration that in thus construing the agreement evidence is admissible to show the meaning which the parties themselves attributed to the word so used by them. In 6 California Jurisprudence, page 285, it is said:

"Parties have power to define the words 'which they use, and their definitions may not be attacked on the ground that they are repugnant to the words defined. If the agreed definitions are free from ambiguity, then the only rule necessary to be invoked is the one requiring contracts to be enforced according to the intention of the parties who made them. . . . "

The point is made particularly clear by the language used by the court in the opinion in the case of *Morrison* v. *Wilson,* 30 Cal. 344, 348. In part it was there said:

"The question then comes to this, have the parties to a written contract the right to set aside the general sense of the words which they use, and for the purposes of the contract to assign to them another and different meaning by convention? That they have both the right and the power to do this there can be no question. The meaning of language depends upon usage and varies with it. If parties should insert a clause in their contract to the effect that the language used by them should be taken in a cer-tain sense which had become provincial, or in the meaning borne by it in a particular trade, and particularly if they should proceed to state the agreed definition in detail, and the definition turned out to be clear and unambiguous, the general meaning would have to give way; and it follows that it must be considered that parties have the power to innovate upon the general meaning of words at large free from all legal restrictions. If they see fit to agree that mile shall stand for league, or grant, bargain and sell for quitclaim, or even black for white, however we might marvel at the caprice, we could not question the power."

In *Higgins* v. *California Petroleum etc. Co.,* 120 Cal. 629 [52 Pac. 1080], one of the questions involved was what meaning was intended by the expression "gross ton" which the parties had used in their agreement. In passing upon the matter, the court said:

"The contention of appellant is, that the statute defines the meaning and use of the word 'ton' (Pol. Code, sec. 3222), and that the lease is unambiguous and cannot be explained or contradicted by parol evidence; therefore, there could have been no evidence at the trial justifying the finding of the court that the phrase 'gross ton' used in the lease meant a long ton of 'two thousand two hundred

and forty pounds.' . . . I. think the question is entirely settled by section 1861 of the Code of Civil Procedure, which reads as follows: 'The terms of a writing are presumed to have been used in their primary and general acceptation, but evidence is nevertheless admissible that they have a local, technical, or otherwise peculiar signification, and were so used and understood in the particular instance, in which case the agreement must be construed accordingly.' I know no reason why this rule would not apply as well to a term indicating a statutory weight or measure as to any other term used in a writing. . . .

"Of course, appellant would contend that even under section 1861 such evidence cannot be received unless the contract expressly indicates a local, technical, or peculiar signification. But the section plainly provides that it may be shown by evidence that the language is used in a technical, local, or peculiar sense, and not merely that evidence may be introduced to show what such meaning is, when language is so used.

"This view is somewhat strengthened by the fact, as shown in respondents' brief, that the phrase 'gross ton' is often used in lieu of the phrase 'long ton' with which we are all familiar in commercial reports, and which always indicates a ton containing two thousand two hundred and forty pounds."

It was held that parol evidence was admissible to show that by the use of the term "gross ton" the parties to the contract had intended a long ton of 2,240 pounds, and not the statutory ton of 2,000 pounds.

In the case of *Shean* v. *Weeks*, 176 Cal. 592 [169 Pac. 231], the court was called upon to determine what was meant by the expression "general confectionist". In the course of the opinion the court said: "The ordinary meaning of words cannot be changed except by proof of general usage by those engaged in the particular trade, *or by proof that the parties to the contract used them in the special sense contended for.*"

In *Anderson* v. *Willson*, 48 Cal. App. 289 [191 Pac. 1016], the controversy centered upon the meaning that properly should attach to the expression "right of way for a canal". It was held (syllabus) that it was "purely a question of intention; and the sense in which the words are

employed by the contracting parties in any given case will depend upon their intention as disclosed by the language of their contract, aided, when proper, by reference to the attendant circumstances''.

As stated in the prevailing opinion herein, by the answer to the complaint defendant pleaded that the questioned provision of the agreement was ''thoroughly understood and agreed by the parties thereto'' to have a specified meaning or significance. To my mind, he should have been given an opportunity to introduce evidence in that regard; and in that connection, in effect the jury should have been instructed that it was its province to determine what was the fact.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1934, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 29, 1934.