[Civ. Nos. 2203 and 2204. Fourth Appellate District.—May 17, 1938.]

JOHN K. HAMILTON et al., Respondents, v. GRACE M. FERGUSON et al., Appellants.

Osborn & Burum, John Shortridge and Siemon & Claflin for Appellants.

Edward West and Frederick W. Welsh for Respondents.

JENNINGS, J.—The complaint filed by plaintiffs in this suit contains three causes of action. By the first cause of action plaintiffs sought to quiet their title to certain land against claims thereto of the defendants Roy N. and Grace M. Ferguson, which were alleged to be without right. By the second cause of action plaintiffs sought to obtain a decree canceling a lease agreement covering the same real property described in the first cause of action in which agreement

plaintiffs were lessors and the defendant Grace M. Ferguson was lessee. By the third cause of action plaintiffs sought declaratory relief in the interpretation of a certain written instrument which related to a portion of the same land mentioned in the two preceding causes of action. Upon the conclusion of the trial a decree was entered whereby it was adjudged that plaintiffs are owners of the fee simple title to the land described in the first two causes of action, that the lease agreement mentioned in the second cause of action be canceled, and that the defendant Lillian E. Hamilton is the owner of an easement for joint use with plaintiffs of a reservoir site and irrigation work on the land described in the third cause of action. From the decree thus entered the defendants Roy N. Ferguson and Grace M. Ferguson and the defendant Lillian E. Hamilton have prosecuted separate appeals. For the sake of convenience and because the instrument wherein Lillian E. Hamilton is mentioned antedates the lease agreement described in the second cause of action the appeal of defendant Lillian E. Hamilton will first be considered.

### Appeal of Defendant Lillian E. Hamilton.

The written instrument which plaintiffs sought to have interpreted by their third cause of action is as follows:

"THIS INDENTURE made this fourth day of September, 1913, between John K. Hamilton of the County of Tulare, State of California, party of the first part, and Lillian E. Hamilton of the County of Kern, State of California, party of the second part, WITNESSETH:

"That the party of the first part for and in consideration of Ten (10) dollars lawful money and other valuable consideration to him in hand paid by said party of the second part, the receipt of which is hereby acknowledged, does hereby *grants,* to the party of the second part, the following tract of land in the County of Kern, State of California, for the permanent use as a reservoir, *sight* and irrigation work, to-wit: an undivided one half interest in and to the S·E ¼ of SE ¼ of SE ¼ of Section 22, T. 29 S., R. 24 E., M.D.M. together with an undivided one half interest in and to all of the pumping machinery pumping plant, water well and the water flowing therefrom or to be developed therein, which are situated on said land.

"The purpose of this deed being to recognize the interest of the party of the second part in said land, water well, pumping plant and water right, to be used in irrigating the land in her Desert Land Entry which embraces the NW ¼ of the said section 22.

"Also an undivided one half interest in and to the main water ditch or water way, running from said well in a generally north westerly direction to a point on the north line of the said SE ¼ of said section, about twenty rods east of the northwest corner of said south east quarter.

"WITNESS my hand the day first above written.

"JOHN K. HAMILTON."

Several contentions are advanced by the appellant, Lillian E. Hamilton, as grounds for reversal of that part of the judgment which applies particularly to her claim that she is the owner of the title in fee to an undivided one-half interest of the real property described in the above-mentioned instrument. These contentions briefly are: first, that the quoted language of the instrument is free from ambiguity and constitutes a conveyance to appellant of an unconditional fee title to an undivided one-half interest in the property; second, that the trial court erred in receiving parol evidence for the purpose of showing the intent of the grantor in executing the instrument; third, assuming that parol evidence was properly admitted the trial court's implied finding that the intention of the parties to the instrument was that an easement rather than title to the land should be conveyed is contrary to the weight of the evidence and hence lacks proper evidentiary support.

It may be conceded that the primary problem presented on this appeal consists of a determination of whether or not the language of the document is sufficiently certain and definite to render unnecessary a resort to extraneous evidence respecting the circumstances surrounding the execution of the instrument, the situation of the parties, and their intention in executing it. In connection with this problem it may be remarked in passing that a determination of unambiguity of terminology would not necessarily lead to a conclusion of prejudicial error in the admission of extraneous evidence since it might conceivably appear from an examination of the verbiage of the entire document that the parties intended that an easement only should be con-

veyed in which event the admission of parol evidence for the purposes heretofore mentioned, although erroneous, could not be considered prejudicial. Appellant evidently recognizes the possibility of such a holding as her entire argument is founded on the premise that the language employed in the document is not only certain and definite but also that thereby fee title to an undivided interest in real property was conveyed to her.

Appellant's insistence that the very language of the deed is of itself indicative of an intent on the part of the grantor to convey a fee title in land is based principally on the significant phraseology of the instrument which, omitting reference to consideration, declares: "The party of the first part . . . does hereby grant, to the party of the second part, the following tract of land." It is declared that this language is clear and definite and is the traditional verbiage employed in deeds which convey fee title to land. It is further observed that if the language which refers to a reservoir site and irrigation work is omitted there is then immediately following a complete description of the land conveyed consisting of "an undivided one half interest in and to the SE ¼ of SE ¼ of SE ¼ of section 22, T. 29 S., R. 24 E., M.D.M. It is further pointed out that the initial language of the next succeeding paragraph which purports to express the purpose of the deed as "being to recognize the interest of the party of the second part in said land" is most pertinent and is indicative of a clear intent on the part of the grantor to convey not a mere easement but title to the land.

It must be conceded that if only the language quoted upon which appellant relies with so much assurance is considered the conclusion is irresistible that appellant's contention is correct and that the instrument must be construed as a grant of fee title to an undivided one-half interest in the land described. However, unfortunately for appellant, there is other language contained in the instrument which must also be taken into consideration. The fundamental canon of construction which is applicable to contracts generally is the ascertainment of the intention of the parties (Civ. Code, sec. 1636) and in accordance with section 1638 of the Civil Code the language of the agreement, if clear and explicit and not conducive to an absurd result, must govern its interpretation. However, this does not mean that a portion only

of a written instrument, although it is clear and explicit, may be selected as furnishing conclusive evidence of the intention of the parties. Section 1641 of the Civil Code lays down the true rule in providing that "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other".

Application of the rule announced in the last-mentioned section makes it necessary, therefore, to give consideration to certain other language which appears in the document. It is apparent that the most significant of such other terminology is the language which occurs immediately preceding the legal description of the land to which the instrument relates. This language is as follows: "for the permanent use as a reservoir, sight and irrigation work". It is conceded by appellant that the word "sight" should be "site" and that the word "reservoir" modifies "site". The comma which appears after the word "reservoir" may therefore be omitted and the language then reads: "for the permanent use as a reservoir site and irrigation work". This language would appear to amount to an express statement of the purpose for which the land thereafter described may be used or, in other words, a specific limitation of the use to which the land may be put by the grantee. It must further be observed that the initial language of the next succeeding paragraph upon which appellant relies, which is: "The purpose of this deed being to recognize the interest of the party of the second part in said land" is accompanied by other verbiage which distinctly qualifies the meaning of the last-quoted language. The complete paragraph is as follows:

"The purpose of this deed being to recognize the interest of the party of the second part in said land, water well, pumping plant and water right, to be used in irrigating the land in her Desert Land Entry which embraces the NW ¼ of the said section 22."

The words "to be used in irrigating the land in her Desert Land Entry" again introduces the element of the express use to which not only the pumping plant and water right but the land itself is to be put by the grantee and apparently constitutes a definite limitation on the grantee's "interest . . . in said land" which is "recognized".

When, therefore, the phraseology of the entire instrument is considered in accordance with the admonition contained in section 1641 of the Civil Code it would appear that the intention of the parties was that the grantee should have the right to use the land for a reservoir site and for such other purposes as would facilitate the irrigation of her own land located in the northwest ¼ of the same section in which the land described in the deed is located. The express qualification of the use to which the land might be put indicates an intention to convey not the extensive interest comprehended by the grant of a fee title but the limited interest contemplated by an easement. It is our opinion that, viewing the whole instrument most favorably to appellant, the trial court might reasonably have concluded that there is sufficient uncertainty of terminology to justify a resort to extrinsic evidence for the purpose of discovering the all-important element of intent and that no error was therefore committed in the admission of parol evidence of which appellant complains. The effect of such evidence may properly next be considered but in so doing it must be borne in mind that the weight of the evidence is a matter which was confided exclusively to the broad discretion of the trial court and also that if any evidence was produced which supports the trial court's conclusion that the deed of September 4, 1913, conveyed no more than an easement in the land such conclusion may not be disturbed.

Examination of the record shows that the only evidence having any bearing on the circumstances surrounding the execution of the instrument which was offered and received during the trial consisted of the testimony of the respondent, John K. Hamilton. This witness testified that about the time the deed was executed his brother, Scott Hamilton, appellant's deceased husband, filed a desert entry on the N. W. ¼ of section 22 and the witness filed a similar entry on the S. E. ¼ of the same section, that the ten-acre tract described in the deed was the highest land on both sections and was therefore the logical place whereon to drill a well whereby the remaining land in both quarter sections might be irrigated for the purpose of carrying on the work which the law required to be done in order to procure issuance of patents to the two quarter sections of land from the U. S. government, that prior to executing the deed the wit-

ness raised the question that as he had no deed or patent to the land he could not legally execute a deed conveying any interest in it but was informed by the person who prepared the instrument at Scott Hamilton's request that he could legally execute it in the form in which it was drawn, that the witness thereupon signed the deed intending to convey merely a water right in the land described in the deed, that thereafter a well was drilled on said land and water produced by the well was used to irrigate the remaining land in both quarter sections until a patent to the N. W. $\frac{1}{4}$ of section 22 was issued to appellant in 1921 after which time no further use was made of the well, that the witness paid all taxes assessed against the land described in the deed of September 4, 1913, from the time he procured a patent in 1920 up to the date of trial. While it is true, as appellant points out, that this witness during the course of his examination did testify that there was an understanding between his brother, Scott Hamilton, and himself that the two of them should have an equal interest in the ten acres described in the deed, the effect of this testimony was merely to create a conflict between such testimony and other testimony of the witness bearing on his intent in executing the deed to which reference has heretofore been made. Obviously if the witness in executing the deed intended to grant no more than an easement in the land described such intent was inconsistent with an "understanding" that he and his brother should have "an equal interest" in the ten-acre tract described in the deed. However, such inconsistency is subject to the familiar rule of appellate procedure which prohibits disturbance of any finding based on conflicting evidence. (*Peterson* v. *Gilbert*, 83 Cal. App. 542 [257 Pac. 140]; *Van DerHoof* v. *Chambon*, 121 Cal. App. 118, 124 [8 Pac. (2d) 925].)

Moreover, with regard to the inconsistency in the testimony of the witness, John K. Hamilton, to which reference has been made, it should be borne in mind that the very deed with respect to whose execution the testimony of the witness related was before the court. As heretofore observed the phraseology employed in this document, taken in its entirety, pointed strongly to an intention of the parties thereto that the instrument should convey nothing more than an easement. It is not strange, therefore, that the trial court ac-

cepted the testimony of the witness which indicated that the intention of the parties at the time the deed was executed was that an easement in the land rather than title in fee should be conveyed. In any event, it was the exclusive function of the trier of facts to weigh the evidence and to resolve whatever conflict appeared therein and his conclusion that the deed conveyed merely an easement in the land may not, under the circumstances here appearing, be disturbed.

### Appeal of Defendants Grace M. Ferguson and Roy N. Ferguson.

The principal contention advanced by these appellants for reversal of that portion of the judgment which relates particularly to them is that the trial court's finding that no consideration of any kind was given to respondents for the execution of the lease agreement which was the basis of the first two causes of action alleged in the complaint is not supported by the evidence. Consideration of this contention necessitates some reference to the evidence bearing on this phase of the case which was produced during the trial.

The lease contract was executed by respondents as lessors and appellant Grace M. Ferguson, as lessee, on November 17, 1922. The consideration expressed therein is the sum of $1, receipt of which is acknowledged. The property leased is "all the oil rights contained" within the S. ½ of the S. E. ¼ of the S. E. ¼ of "sec. twenty-two (22) twenty-nine (29) twenty-four (24) for the purpose and with the exclusive privilege of drilling and operating for oil on said land and of extracting said oil therefrom". The term of the lease is 25 years.

The evidence produced which related to the execution of the agreement showed that in the early part of 1921 the respondents entered into a contract with the father of appellant Grace M. Ferguson, whereby the former agreed to sell and the latter agreed to purchase 80 acres of land in said section 22 at the price of $100 per acre to be paid in instalments. Two payments of $1,000 each were made on the purchase price. On May 24, 1922, a further payment of $2,000 became due under the terms of the contract. This payment was not made and the sale contract was rescinded by mutual consent. Subsequently the agreement of lease to

which reference has heretofore been made was executed. It was the contention of appellants that the lease was made by respondents pursuant to an agreement for rescission of the sale contract and that prior to May 24, 1922, respondent John K. Hamilton agreed that if the sale contract were rescinded and he were permitted to retain the $2,000 which he had received under the contract he would execute a lease to the purchaser which would cover 20 acres of the land described in the sale contract for a term of 25 years.

The evidence upon the feature of consideration for the making of the lease was conflicting. Respondent John K. Hamilton testified that the appellant Roy N. Ferguson, who was apparently acting for his father-in-law, stated to him at the time the $2,000 payment became due that he could not make any additional payments on the sale contract, that the witness inquired about obtaining the copy of the sale contract which the purchaser had in his possession and Ferguson told him to destroy the copy which the witness had and that would be the end of it, that nothing was said at that time about making a lease, that probably a year later the witness had another conversation with Roy N. Ferguson, at which time Ferguson said he hated to lose the money which had been paid on the sale contract as it was his wife's money and inquired if the witness could not give him something, to which the witness replied that the purchaser had received his money's worth but as it was "a bad family situation" he might give him a lease covering 20 acres of the land. On the other hand the appellant, Roy N. Ferguson, testified that some time prior to May 24, 1922, he saw respondent, John K. Hamilton, at which time he reminded Hamilton that he, Ferguson, was the person who had made the original report which "started the excitement in Buttonwillow"—Buttonwillow apparently being the popular name for the particular locality in Kern County in which the land is situated—that the witness was a geologist and if he had some property there, would be in a position to attempt to revive the activity in the Buttonwillow district, that the witness was not in a position to carry out the original purchase contract and accordingly would return it to him in exchange "for the fee mineral rights, as I worded it on the ten acres" and that Hamilton said he would draw up such a document and mail it to the witness which was done a month later. This witness

further testified that he did return the original sale contract between his father-in-law and respondents on May 28, 1922, and in corroboration of his testimony in this regard a carbon copy of the letter which was enclosed with the sale contract when it was returned to John K. Hamilton was introduced in evidence. The letter thus placed in evidence is in the following language:

"Corcoran, Calif.
"May 29, 1922.

"Mr. J. K. Hamilton, Jr.,
  "Delano, Calif.
"Dear Mr. Hamilton:—

"In accordance with our recent understanding I am enclosing my copy of the agreement which we had in regard to the NW¼ of the SE¼ of Sec. 22 T. 29 S R 24 E, MDM.

"I have never recorded the agreement so that all you need do to clear your title is to destroy both copies. In drawing up the deed to the oil and gas rights on the ten acres of this tract, as per our understanding, it would simplify matters for me if you would make the papers out in the name of my wife, Grace M. Ferguson, instead of Thomas Bodley. This however, is of no great consequence, and if for any reason you would prefer to have the new papers made out in the same name we can fix it up later.

"Yours very truly,
"R. N. Ferguson,
"Box 366, Corcoran, Calif."

Much reliance is placed by appellants on this exhibit which it is declared fully corroborates the above-described testimony of the witness, Roy N. Ferguson. It is particularly relied on as evidence conclusively contradicting the testimony of respondent, John K. Hamilton, to the effect that nothing was said about giving a deed or a lease at the time the conversation regarding the destruction of the original sale contract occurred. It is pointed out that the letter bears the date May 29, 1922, and that it contains the significant suggestion that it would simplify matters for the writer, Ferguson, if Hamilton "in drawing up the deed to the oil and gas rights on the ten acres of this tract, *as per our understanding*" (italics ours) would make out the papers in the name of the writer's wife instead of in the name of Thomas Bodley, who was Ferguson's father-in-law. It is observed that the

initial paragraph also refers to ''our recent understanding''. It must be conceded that this evidence did tend to contradict the testimony of Hamilton that it was ''probably a year'' after the conversation concerning the destruction of the written sale agreement when Roy N. Ferguson complained that the $2,000 paid on the sale contract was his wife's money which he hated to lose and when Hamilton said that since it was a bad family situation he might give him a lease covering 20 acres of the land. However, it must be observed that although the letter of May 29, 1922, tended to some extent to corroborate the testimony of Ferguson, nevertheless there was still a direct conflict in evidence as to whether or not Ferguson, acting for his father-in-law, consented to a rescission of the sale contract in exchange for Hamilton's promise to convey some sort of interest in the mineral rights to 10 acres at a time when the purchaser was not in default under the terms of the sale contract. In the second place, it is worthy of mention that the letter of May 29, 1922, upon which these appellants place so much reliance, was written by the appellant Ferguson. The significant reference to a deed to be drawn ''as per our understanding'' is the language of Ferguson. It is purely self-serving and its weight as evidence is therefore materially affected by this important fact. It may be assumed that the trial court had this qualification in mind in giving consideration to the contents of the letter. In the third place, it must be noted that the letter refers specifically to a deed, whereas, the instrument upon which appellants rely is a lease and it is a lease not to 10 acres but to 20 acres of land. There is also no dispute that the lease which bears the date of November 17, 1922, was actually sent to R. N. Ferguson on November 21, 1922, as shown by Hamilton's letter of the last-mentioned date which was enclosed with the lease. This was approximately six months after the date on which the payment of $2,000 under the provisions of the sale contract was due and almost the same length of time after the date on which appellant Ferguson returned the sale agreement to Hamilton with the statement that he had never recorded the agreement and that accordingly Hamilton need only destroy both copies of the contract in order to clear his title. It was the lease which respondents sought by their second cause of action to have canceled and it was likewise the lease which constituted a cloud on their

title that respondents sought to have quieted by their first cause of action. Respondent, John K. Hamilton, testified positively that the nominal consideration of $1 expressed in the lease was never paid to him. The record shows that this testimony stood uncontradicted. The evidence was ample to establish that the contract for the sale of the 80 acres was rescinded by mutual consent of the parties to the contract. As heretofore observed, appellants endeavored to show that their agreement to rescind the sale contract was made in consideration of a promise by respondents to give them a lease to 20 acres of the land described in the sale contract and that the lease sought to be canceled was given pursuant to respondents' promise. If, however, the purchaser under the sale contract was in default when the promise to give the lease was made or if the sale contract had been effectually rescinded before respondents agreed to give the lease there was then no consideration for the lease and, like any other agreement unsupported by consideration, it could properly be canceled and respondents would be entitled to have their title quieted against any claims of appellants based thereon. It is our conclusion from an examination of the record that the trial court's finding of an entire want of consideration to support the lease agreement is not so lacking in evidentiary support as to justify its disturbance. Appellants make no contention that the lease agreement, if entirely unsupported by consideration, could not properly be ordered canceled. Such contention, if made, would obviously be unavailing. (Civ. Code, secs. 1689, 3406, 3412; *Pennell* v. *Stanley W. Smith, Inc.*, 204 Cal. 540 [269 Pac. 171]; *Hironymous* v. *Hiatt*, 52 Cal. App. 727 [199 Pac. 850].)

Appellants also attack the trial court's legal conclusion that appellant Grace M. Ferguson had abandoned any right, title, or interest in the land she might ever have been entitled to claim under the lease agreement. It is unnecessary to give consideration to this contention in view of our conclusion that the finding of want of consideration for the lease is not lacking in evidentiary support. ■ The presence of this finding properly supported is sufficient to justify the entry of a decree canceling the lease and quieting the title of respondents to the land described in the lease even though it might appear that the court incorrectly concluded that the lessee had abandoned whatever interest she claimed to have

in the land under the terms of the lease. The presence of a single clear and sufficient finding properly supported upon which the judgment may rest justifies the conclusion that the trial court based its judgment on such finding. (*American Nat. Bank* v. *Donellan,* 170 Cal. 9, 15 [148 Pac. 188, Ann. Cas. 1917C, 744] ; *In re McNamee,* 131 Cal. App. 30, 32 [20 Pac. (2d) 722].)

For the reasons stated herein the judgment from which the separate appeals have been taken is in all respects affirmed.

Barnard, P. J., and Marks, J., concurred.