[Civ. Nos. 5733, 5756.   Fourth Dist.   Jan. 22, 1959.]

S. P. KRAEMER et al., Respondents, v. WALTER KRAEMER et al., Appellants.

[Two Cases.]

C. Paul Du Bois, John E. Sisson, Otto Jacobs, Robert Corfman, Samuel Hurwitz, William E. Burby and Wise, Kilpatrick & Pulley for Appellants.

Mize, Larsh, Mize & Hubbard, R. C. Mize, Marjorie Mize, Marcus Mattson, L. B. Conant and Lawler, Felix & Hall for Respondents.

COUGHLIN, J. pro tem.*—This is an action to quiet title to 47.61 acres of land commonly referred to by the parties as the "Reservoir Site." The primary issues presented on this appeal concern the effect of an allegedly ambiguous deed and the sufficiency of the evidence to sustain a finding of adverse possession by a cotenant.

In 1881 Daniel Kraemer "granted and conveyed" to the Anaheim Water Company "the right and privilege" of using the 47.61 acres of land in question for reservoir purposes, including the right to do whatever was necessary to construct dams and store water thereon, together with rights of way for ditches and canals. The "Reservoir Site" was described by metes and bounds.

The following year Daniel died testate and two of his children, Samuel and Jonathan, as the principal beneficiaries under his will, were devised in excess of 3,000 acres of land, receiving title as cotenants through a decree of distribution describing the property by the description used in the deed conveying title to their father, "excepting such portions thereof as were conveyed by Daniel Kraemer in his life time to various parties" including "a tract containing 47.61 acres conveyed by said Daniel to the Anaheim Water Company for a Reservoir Site, recorded in Book 82 of Deeds, page 335 . . . reference being made for more particular description of said excepted portions to said deeds respectively."

In 1886 Samuel and Jonathan, by deeds, partitioned the property distributed to them as cotenants. For descriptive purposes, these deeds referred to a simultaneously recorded map of the Kraemer Tract, which divided the property into blocks and showed the "Reservoir Site" located on the southerly portion of Blocks E and F of that tract. A description of the northerly portion of said Blocks E and F, consisting of 452.50 acres, was included in the deed from Samuel to Jonathan, and a description of the southerly portion, con-

---

*Assigned by Chairman of Judicial Council.

sisting of 450.40 acres, was included in the deed from Jonathan to Samuel. The latter deed is the one heretofore referred to as containing an alleged ambiguity; it described all of the property which Jonathan conveyed to Samuel and consists of three paragraphs; the first paragraph contains the granting clause and a description of all property conveyed, except that described in the second paragraph which sets forth a description of the southerly 450.40 acres of Blocks E and F; the portion of Block F contained in this description consists of approximately 212 acres and includes all of the "Reservoir Site" with the exception of a small part thereof in Block E; the third paragraph recites the following: "Excepting and reserving from the operation of this deed the forty-seven and 61/100 (47 61/100) acre tract conveyed by Daniel Kraemer to the Anaheim Water Company for Reservoir purposes —the boundaries of which tract are shown on the said map."

One of the issues on this appeal concerns the effect of the foregoing third paragraph. Although the terms "excepting" and "reserving" may be contradictory (*Victory Oil Co.* v. *Hancock Oil Co.*, 125 Cal.App.2d 222, 232 [270 P.2d 604]), their use in this instance, when considered in context, relates a singular intention to effect an exception from the operation of the deed, i.e., from the grant. (*Van Slyke* v. *Arrowhead etc. Power Co.*, 155 Cal. 675, 680 [102 P. 816]; *Butler* v. *Gosling* 130 Cal. 422 [62 P. 596]; *Victory Oil Co.* v. *Hancock Oil Co., supra,* 125 Cal.App.2d 222, 232.) The real controversy between the parties involves the subject matter of this exception. Does the language used identify a tract of land as the subject of the exception, or does it identify an interest in the land as such subject? Defendants contend that the language referring to a 47.61/100 acre tract *conveyed* by Daniel to the Aneheim Water Company for reservoir purposes, the boundaries of which are shown on the Kraemer tract map, clearly indicates an intention to except from the operation of the deed the land to be used as a reservoir site. Plaintiffs counter with the claim that Daniel *did not convey* a tract of land to the water company, but rather, *conveyed* an easement, and contend that the exception refers only to this easement, arguing that the language used indicates an intention to except from the operation of the deed that property which Daniel, in fact, did convey to the water company, which was an easement. That the original deed to Anaheim Water Company conveyed only an easement is conceded by all parties.

In 1888, two years after the partition deeds had been executed, Samuel and Jonathan, each, executed a deed to the other for the purpose of correcting errors. By his correction deed Jonathan conveyed to Samuel all of his interest "in and to that tract of land . . . described in the second paragraph of the description" in the 1886 partition deed to Samuel, the land here "referred to being the land therein last described as granted." The 1888 deed also contained the following: "This deed is given to correct an error in a deed heretofore made" by Samuel to Jonathan "*and* to establish the Eastern boundary of said tract as described in said deed first aforesaid as the true boundary between the lands of the parties hereto." (Italics ours.) The only boundary between the lands of the parties was Samuel's northern boundary and Jonathan's southern boundary. The eastern boundary of Samuel's property did not separate it from Jonathan's property. The foregoing correction deed made no mention of the exception contained in the prior partition deed, and whether the correction deed gave Samuel a clear title to the southerly portion of Blocks "E" and "F," freed of any alleged interest Jonathan might have had in the "Reservoir Site," is a subject of further controversy between the parties to this action.

In 1893, Jonathan, having suffered financial reverses resulting in the loss of all his property, left the area and eventually settled in Mexico, where he was visited by Samuel and his son in 1910.

In the meantime, the Anaheim Water Company, and its successor, Anaheim Union Water Company, had abandoned their efforts to maintain a reservoir on the 47.61 acre site, and in 1906 Samuel purchased the water company's interest in that site for $1,000, receiving a deed, which was recorded, conveying such interest to him individually.

After acquiring the water company's interest in the "Reservoir Site," Samuel made various uses of the 212 acres in Block "F," including this site, and otherwise exercised acts of ownership over the property; the whole property was leased on two occasions, the leases being recorded; the fences around the "Reservoir Site" were removed, leaving the property enclosed by a fence around the 212-acre plot, which later was removed in part; the land was cleared, planted to walnut trees and thereafter interset with orange trees; part of the property was used as a gravel pit and other parts were used for farming purposes, such as the raising of bees, the

growing of corn and beans; in 1916 Blocks "E" and "F," including the "Reservoir Site," were subdivided into eight lots each and a map thereof recorded which designated the subdivision as "Tract No. 56-Kraemer Tract No. 2"; this map carried a certificate signed by Samuel and his wife declaring they were the owners of and the persons whose consent was necessary to pass a clear title to the land therein described, and dedicating to public use all highways, drives and alleys shown thereon.

In 1917 Jonathan returned from Mexico, and visited with his relatives in California. On one occasion during this visit, Jonathan, accompanied by Samuel, his brother Ben and Samuel's son, made a trip to an oil drilling project on land formerly owned by Jonathan, which took them through Block "F," past the "Reservoir Site," and Jonathan expressed surprise at the change effected by the clearing of the wilderness and the planting of walnut trees. While at the site of this oil well, when Samuel expressed a belief that the entire property to the south, which included the "Reservoir Site" along with other property in Block "F," would be oil property, Jonathan expressed the hope that oil would be discovered both on Samuel's property and on Ben's. There was a great deal of "oil activity" in this area at this time, including efforts by different oil companies to obtain oil leases, together with attendant newspaper notoriety. The evidence does not disclose that Jonathan, at any time, made any claim to any interest in the "Reservoir Site." After concluding a four-month visit in California, Jonathan left and, eventually, took up residence in Texas, where he died in 1921 and his estate was probated. The individual defendants are his heirs at law, or their successors in interest. Most of these defendants have lived in the immediate vicinity of the property for a great number of years.

In 1919 Samuel leased the 212-acre parcel in Block "F," including the 47.61 acres in the "Reservoir Site," to the Standard Oil Company, for 25 years. This lease purported to affect all interests in the property; was executed by Samuel individually as sole lessor; did not separately describe the "Reservoir Site"; was recorded, and received considerable newspaper notoriety. The lessee went into possession; erected and installed derricks, buildings, tanks, camps, extraction plants and pipe lines; drilled a great number of oil producing wells, including five or six on the "Reservoir Site," and paid rents and royalties to Samuel and his successors.

In the meantime, houses, barns and sheds were erected on and moved from various locations on or near the "Reservoir Site" and parts of this site were used for farming activities of various types. Samuel, in his sole name, conveyed easements across the property for pipe line purposes, which were recorded. In some instances, the exact location of these possessory acts, with respect to the boundaries of the "Reservoir Site" is not clearly indicated by the evidence. However, they support the conclusion that Samuel and his successors considered the property as a whole, not segregating the "Reservoir Site" from the balance thereof for ownership purposes.

Between 1920 and 1934 Samuel and his wife deeded to each of their eight children, who are the plaintiffs in this action, one of the lots in Block F of Tract Number 56, reserving the oil and gas rights therein, but conveying to each child an undivided one-tenth interest in all oil and gas rights appurtenant to all eight lots, i.e., the 212-acre parcel. Five conveyances were made in 1920, one in 1927, and two in 1934. Each of these deeds was recorded; was executed by the grantors as sole owners and not as cotenants; and purported to convey the entire fee to the property therein described, less the oil rights reserved by the grantors; no exception of property within the "Reservoir Site" was made; and no acknowledgment of an outstanding interest in Jonathan, or his successors, was expressed. Each of the eight deeds contained a conveyance of the aforesaid one-tenth oil and gas interest; the remaining two-tenths interest was retained by Samuel and his wife until they died in 1937 and 1941, respectively, whereupon it was distributed to their children in equal shares.

After the execution of the foregoing conveyances, these children went into possession of their respective lots; continued in possession for a period covering between 19 and 33 years; executed agreements, which were recorded, extending and modifying the 1919 lease to "Standard Oil"; received the royalties paid under that lease and its extension; conveyed several rights of way to that and other companies, which were recorded; constructed improvements, farmed, leased, excavated, encumbered, occupied and exercised other acts of ownership on and concerning their respective property, making no distinction between that portion within and that portion without the "Reservoir Site"; and annually paid all the taxes levied upon the property described in their deeds, which included that site.

In 1953 probate proceedings in the estate of Jonathan were commenced in Orange County. Thereafter, the plaintiffs, Samuel's children, brought this action to quiet their title against the defendants, who claim an interest in the "Reservoir Site" as personal representatives, heirs at law, or successors in interest of Jonathan, based on a contention that his rights as cotenant never were transferred or terminated. The defendants filed a cross-complaint, seeking to quiet title to their alleged interest in this property, and for an accounting. The Standard Oil Company of California was included as a cross-defendant. In substance, the trial court concluded that the 1886 deed by Jonathan transferred to Samuel, in severalty, the entire title to the property described in the complaint, except for the easement theretofore conveyed to the Anahim Water Company, which Samuel subsequently acquired, and further concluded that, in any event, the facts established by the evidence created a title by adverse possession in Samuel and in the plaintiffs, freed of any alleged cotenancy interest. In accord with its conclusions, and upon the authority of *H. & J. Mabury Co.* v. *Bryant,* 9 Cal.2d 586, 590 [71 P. 1111], the trial court made a finding of good record title as well as a finding of good title by adverse possession. Thereupon judgment was entered in favor of the plaintiffs and cross-defendants, from which the defendants and cross-complainants appeal, contending that both the finding of a good record title and the finding of title by adverse possession are conclusions of law not supported by the evidence; that the 1886 deed from Jonathan to Samuel clearly excepted the 47.61-acre "Reservoir Site" from the grant; that the court erred in concluding that this deed was ambiguous and uncertain, in permitting the introduction of evidence to interpret the deed or determine the intention of the parties thereto, and in finding that the deed excepted from its operation only an easement in and not a fee to the disputed 47.61 acres; that the 1888 correction deed did not convey to Samuel the outstanding cotenancy interest; and that errors were committed in rulings on matters of evidence as related to the issues raised by the pleadings. Defendants also appeal from orders made after judgment, contending that there was error in the preparation of the record on appeal, and in ruling on a motion for new trial under section 953e of the Code of Civil Procedure.

■ "The intention of the parties to a grant is to be gathered if possible from the language itself and is determined by a proper construction of the language used rather than by

resorting to extrinsic evidence." (*Pinsky* v. *Sloat*, 130 Cal. App.2d 579, 588 [279 P.2d 584]. In accord: *Hartwig* v. *Central-Gaither Union School Dist.*, 200 Cal. 425, 427 [253 P. 733] ; *Mitchel* v. *Brown*, 43 Cal.App.2d 217, 221 [110 P.2d 456].)

▉ This intention must be gained from a consideration of the entire document, and every part thereof must be given effect if reasonably practicable. (Civ. Code, § 1641; *Burnett* v. *Piercy*, 149 Cal. 178, 189 [86 P. 603] ; *Weber* v. *Graner*, 137 Cal.App.2d 771, 774 [291 P.2d 173] ; *Paddock* v. *Vasquez*, 122 Cal.App.2d 396, 400 [265 P.2d 121] ; *Moakley* v. *Los Angeles Pacific Ry. Co.*, 139 Cal.App. 421, 423 [34 P.2d 218].)

▉ The 1886 partition deed from Jonathan to Samuel described the property to be excepted from its operation as "the forty-seven 61/100 (47 61/100) acre tract *conveyed* by Daniel Kraemer to the Anaheim Water Company for reservoir purposes" (italics ours). The defendants urge that the term "tract" means "tract of land." The boundaries of that tract are shown on the map to which reference is made in the deed. Thus, this deed, in substance, refers to two other instruments, i.e., a conveyance and a map. ▉ When a deed refers to other instruments the latter become a part of the former, and all of them must be considered as a whole to determine the intention of the parties. (*Anderson* v. *Trotter*, 213 Cal. 414, 420 [2 P.2d 373] ; *Biescar* v. *Czechoslovak-Patronat*, 145 Cal. App.2d 133, 142 [302 P.2d 104] ; *Holbrook* v. *Fazio*, 84 Cal. App.2d 700 [191 P.2d 123] ; *Hamilton* v. *Ferguson*, 26 Cal. App.2d 390, 394-395 [79 P.2d 427] ; *Edwards* v. *Lewis*, 25 Cal.App.2d 168, 172 [76 P.2d 720] ; *Drake* v. *Russian River Land Co.*, 10 Cal.App. 654 [103 P. 167].)

▉ Daniel Kraemer did not *convey* to the Anaheim Water Company the *tract of land* which the defendants contend is excepted from the operation of the partition deed. As noted by the trial judge in his memorandum opinion, the obvious purpose of the exception was to exclude from the operation of this deed property which already had been conveyed and over which the grantor had no legal control, i.e., the easement to Anaheim Water Company. (*Lewis* v. *Standard Oil Co. of California*, 88 F.2d 512, 515; *Goss* v. *Congdon*, 114 Vt. 155 [40 A.2d 429].)

In *Boring* v. *Filby*, 151 Cal.App.2d 602, 605 [311 P.2d 869], a conveyance from the defendants to the plaintiffs contained this clause: "SAVING, EXCEPTING AND RESERVING from Parcels 1, 2 and 3 above all oil gas and minerals, etc., *as contained* in Deed from Bank of America . . . to Edgar O. Filby and

Annie M. Filby . . .'' (Italics ours.) The defendants Filby previously had acquired parcels 1, 2 and 3 from the Bank of America by a deed which reserved to the Bank, as grantor, all oil, gas and minerals but thereafter, by agreement, also received these oil, gas and mineral rights; the plaintiffs claimed these rights under the aforesaid conveyance to them; the defendants contended that these rights were excepted from the operation of that conveyance; a judgment in favor of the plaintiffs was sustained, the court saying: ''There is no language in the deed (from the Bank to the defendants) that could possibly be construed as conveying any of the mineral rights to the Filbys. The clause in question contained in the deed from the defendants to the plaintiffs is no more than a reference to an outstanding interest.'' As no mineral rights were ''contained'' in the deed from Bank of America to defendants, the questioned clause excepting and reserving the mineral rights ''contained'' in that deed, in effect, excepted and reserved nothing. The situation in the instant matter is analogous.

In the case at bar, although Daniel Kraemer did not convey to the Anaheim Water Company a tract of land, he did convey an easement, i.e., a ''tract conveyed . . . *for Reservoir purposes.*'' (Italics ours.) In a number of instances the language of a deed granting a tract or a specifically described parcel of property *for a particular purpose* has been held to convey only an easement for that purpose. (*Parks* v. *Gates*, 186 Cal. 151, 152-154 [199 P. 40] ; *Pellissier* v. *Corker*, 103 Cal. 516 [37 P. 465] ; *City of Glendora* v. *Faus*, 148 Cal.App.2d 920, 922 [307 P.2d 976] ; *Hamilton* v. *Ferguson, supra*, 26 Cal. App.2d 390, 392, 396 ; *Marlin* v. *Robinson*, 123 Cal.App. 373, 376 [11 P.2d 70].) In these cases the courts determined that the recital of the purpose was a part of the granting clause. No valid distinction exists between the meaning of particular language used to describe the extent of the interest in property conveyed and similar language used to describe the extent of the interest in property excepted from a conveyance. In *Coon* v. *Sonoma Magnesite*, 182 Cal. 597 [189 P. 271], the court held that an easement only was excepted from the operation of a deed by the following phraseology: ''Saving and excepting therefrom a strip of land forty feet wide . . . for a road to be built at some future time.'' In *Moakley* v. *Los Angeles Pacific Ry. Co.*, 139 Cal.App. 421, 425, *supra*, a finding of the trial court that an exception from a described parcel of ''so much as has been taken for the

county road known as Vermont Avenue, for the street known as Benefit Street and for electric car lines across said land," excepted only an easement, was sustained on appeal. In *Penn* v. *Holland*, (Tex.Civ.App.) 105 S.W.2d 351, 353, 354, the following language in a deed was held to except only a previously conveyed easement, to wit: "Save and except three (3) acres of land out of said tract, the same having been conveyed by me to the Houston Galveston Electric Railway Company," and the court said that the deed in question "does not rise higher than its source, in the sense that it merely meant—by its express reference back to the conveyance of April 26th—to confirm the right of way and easement over the same land that had been previously granted to the railway company." In *Pitcairn* v. *Harkness*, 10 Cal.App. 295, 297 [101 P. 809], it was held that the reservation of "a strip of land twenty-five feet wide . . . for street purposes" reserved an easement only, and that a subsequent grant reciting that "said purchase includes 25 feet . . . to be used for streets" transferred this easement. In *Boothe* v. *McLean* (Tex.Civ.App.) 267 S.W.2d 158, 165, the court considered a description containing the following language: ". . . save and except 36.54 acres of land heretofore conveyed to the . . . railway company, and that *occupied by the public road* passing along the east and north side of the . . . right of way"; the 36.54 acres was the land over which the railroads and the public had easements only, which had been acquired by eminent domain proceedings and not by conveyance; and it was held, as a matter of law, that the phraseology under consideration excepted only the easements from the property described.

In support of their contentions, the defendants cite *Seligman* v. *Carr*, 8 Cal.App. 572 [97 P. 324] and *Hartwig* v. *Central-Gaither Union School Dist.*, 200 Cal. 425 [253 P. 733], as involving a basic question identical with that presented in the case at bar. However, these cases are clearly distinguishable from the one before us. In each of them, an original deed conveyed property to a school district upon condition that it should be used for school purposes and provided for a reversion in the event the property was not so used; a subsequent deed excepted from its operation the property theretofore conveyed to the school district and, consequently, retained the reversionary interest in the grantors. There was no question in the cited cases as to whether the

subsequent deeds excepted a fee or an easement, as the original deeds did not convey an easement.

It is our conclusion that the deed in question, including the conveyance and map referred to therein, clearly indicate an intention to except from its operation that interest in the subject property previously *conveyed* by Daniel to the Water Company, which was an easement, and did not indicate an intention to except therefrom the fee to the tract of land subject to that easement which *had not been conveyed*.

■ Where the language of a deed is uncertain, i.e., "fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import" (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal. 2d 517, 525 [297 P.2d 428]), circumstances surrounding its execution and the subsequent conduct of the parties with respect thereto may be considered in order to determine their intention in consonance with the language used; to determine "what they meant *by* what they said." (*Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19, 23 [297 P. 20] ; Civil Code, section 1647; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665] ; *Van Slyke* v. *Arrowhead etc. Power Co., supra,* 155 Cal. 675, 681; *Poles* v. *Glass*, 136 Cal.App.2d 508, 510 [288 P.2d 986] ; *Paddock* v. *Vasques*, 122 Cal.App.2d 396 [265 P.2d 121].)

■ If it be assumed that the deed in question did not clearly express an intention to except from its operation only the water company's easement, neither did it clearly express an intention to except the entire fee of the tract subject to that easement, and the action of the trial court in permitting the introduction of extrinsic evidence, together with its finding that the parties actually intended to except only the easement, which is adequately supported by the record, were proper and its conclusion was sound. In this regard, it is noteworthy that the phraseology used in the partition deed to describe the excepted interest in the "Reservoir Site," and that used in the decree of distribution in the estate of Daniel Kraemer, for the same purpose is substantially identical; the former excepted "the forty-seven and 61/100 (47 61/100) acre tract conveyed by Daniel Kraemer to the Anaheim Water Company for Reservoir purposes," while the latter excepted ". . . such portions . . . as were conveyed by said Daniel Kraemer in his lifetime to various parties, to wit: . . . a tract containing 47.61/100 acres conveyed by said Daniel to the Anaheim Water Company for a reservoir site . . ." In

partitioning the property awarded to them by the decree of distribution, it is reasonable to assume that Samuel and Jonathan referred to that decree for the description of that property. The decree clearly excepts from its operation only that property which Daniel had conveyed in his lifetime. The findings of the trial court that the partition deed did likewise is supported by the foregoing circumstances. In addition, there is substantial evidence to support the conclusion that the subsequent conduct of the parties confirmed the fact that they intended the partition deed to dispose of all of the property they owned and to except therefrom only that property over which they had no control.

The defendants' claim of error in the admission of extrinsic evidence to assist in the interpretation of the 1886 deed is of no avail in any event; if the deed clearly excepted only an easement, the admission of such evidence was not prejudicial. (*Hamilton* v. *Ferguson, supra,* 26 Cal.App. 2d 390, 393; *Marlin* v. *Robinson, supra,* 123 Cal.App. 373, 378.) If the deed was not clear such admission was proper.

Even though it be assumed that the deed executed by Jonathan in 1886 did not effectively convey to Samuel all of Jonathan's interest in the "Reservoir Site," the evidence adequately supports the conclusion that whatever interest Jonathan or his successors may have had in this property was terminated by the adverse possession of the plaintiffs. The trial court found that the plaintiffs on the dates of their respective deeds from Samuel and his wife, as the grantees therein named, entered into exclusive possession of the property therein described, including the oil rights conveyed thereby, and, upon the dates of the aforementioned decrees of distribution entered into the exclusive possession of the remaining two-tenths interest in those oil rights; that "from and after the respective dates of said deeds and decrees of distribution to the time of the commencement of this action said respective grantees remained in the continuous, open, notorious, exclusive, adverse, actual, uninterrupted, hostile and peaceable occupancy and possession of the property described in said deeds and decrees of distribution . . ." and during that time "exercised overt, open, notorious, adverse and hostile acts of ownership of said property of such unequivocal character as to clearly manifest and impart notice and knowledge to D. Jonathan Kraemer, and to the defendants, of the hostile intent of the plaintiffs . . . to hold said property adversely and in their own exclusive right for themselves

alone''; that during all of this time none of the plaintiffs knew of the existence of any cotenant or cotenancy respecting any of said property, and, until May 19, 1953, no one made any claim to any interest therein; and that the taxes assessed against said property during that time were paid by the plaintiffs, with the exception of those assessed against the mineral rights which, pursuant to the lease in question, were paid by the lessee oil company on behalf of the plaintiffs.

To establish title by adverse possession there must be an actual, open, notorious occupancy of the subject property, which is hostile and adverse to the owner's title, under such circumstances as to give reasonable notice thereof, either actual or constructive, to the true owner, by an occupant claiming the property exclusively as his own, under a claim of right or color of title, which is continuous and uninterrupted for five years, and is accompanied by the occupant's payment of all taxes levied or assessed against the property during that period of time. (*West* v. *Evans*, 29 Cal.2d 414, 417 [175 P.2d 219]; *Meier* v. *Meier*, 71 Cal.App.2d 502, 505-506 [162 P.2d 950].) ''The requirement of 'hostility' . . . means, not that the parties must have a dispute as to the title during the period of possession, but that the claimant's possession must be adverse to the record owner, 'unaccompanied by any recognition, express or inferable from the circumstances of the right in the latter.' '' (*Sorensen* v. *Costa*, 32 Cal.2d 453, 459 [196 P.2d 900].)

The defendants contend that plaintiffs' occupancy was not under such circumstances as constituted reasonable notice of the hostile character of their claim; that there was no ouster of the tenants out of possession. This contention is based on the well settled principle that the exclusive occupancy of a cotenant is deemed permissive and does not become adverse until the tenant out of possession has had notice, either actual or constructive, that the possession of the cotenant is hostile to him. (*West* v. *Evans*, *supra*, 29 Cal.2d 414, 418; *Johns* v. *Scobie*, 12 Cal.2d 618, 623 [86 P.2d 820, 121 A.L.R. 1404].) When the entry into occupancy is avowedly as a tenant in common with others, the possession thus gained is the possession of the others and continues as such until the tenancy in common is disclaimed. (*Akley* v. *Bassett*, 189 Cal. 625, 641-642 [209 P. 576].) Under such circumstances, in order to constitute evidence of a disclaimer, the conduct of the tenant in possession must be such as amounts to an ouster of the other cotenants and consist

of "acts of the most open and notorious character, clearly giving notice to the world, and to all having occasion to observe the condition and occupancy of the property, that the intention is to exclude, and does exclude the cotenants." (*Akley* v. *Bassett, supra,* 189 Cal. 625, 642.) ▮ Defendants urge that the evidence in this case does not meet these requirements. However, the foregoing rules have "no application to a case where the possession of the person in question was neither avowedly begun as a tenant in common, nor instituted under a deed or instrument which defined his title as such." (*Akley* v. *Bassett, supra,* 189 Cal. 625, 642; *Johns* v. *Scobie, supra,* 12 Cal.2d 618.) ▮ An entry by a grantee under a deed from a cotenant in exclusive possession, which purports to convey the whole of the property, without notice of the cotenancy, is presumed to be the assertion of an exclusive right in severalty; is equivalent to an express declaration on the part of the grantee that he claims the whole interest; constitutes an ouster of the cotenants out of possession; and is such a disseisin as sets the statute of prescription in motion in his favor and against them. (*Johns* v. *Scobie, supra,* 12 Cal.2d 618, 624; *Akley* v. *Bassett, supra,* 189 Cal. 625, 642; *Frick* v. *Sinon,* 75 Cal. 337, 339 [17 P. 439, 7 Am.St.Rep. 177]; *Bath* v. *Valdez,* 70 Cal. 350, 358 [11 P. 724]; *Packard* v. *Moss,* 68 Cal. 123, 129 [8 P. 818]; *Zolezzi* v. *Michelis,* 86 Cal.App.2d 827, 831 [195 P.2d 835].) ▮ Such is the case at bar. The entry and claim of the plaintiffs rest on color of title, being made under deeds which implied full ownership (*Akley* v. *Bassett, supra,* 189 Cal. 625, 640); the estate purporting to be conveyed, not the estate actually conveyed, characterized their entry. (*Akley* v. *Bassett, supra,* 189 Cal. 625, 642.) Although each deed reserved to the grantors the oil and gas rights appurtenant to the particular lot described therein, the combined deeds, together with the decrees of distribution in the estates of the grantors, in turn conveyed to the grantees all such rights in all of these lots. None of the grantees had any knowledge of an outstanding interest in Jonathan or his successors. There was no indication in any of the deeds that Samuel or his wife intended to convey only a one-half interest in any of the property transferred. To the contrary, the map therein referred to represented that Samuel and his wife were the sole owners of the tract therein described. After entering into possession, the plaintiffs exercised acts of ownership which were in total disregard of and adverse to the rights of any other person

in any part of their land. The recorded map of Tract Number 56 had obliterated the preexisting concept of a defined and described ''Reservoir Site.'' The evidence supports the conclusion that each plaintiff occupied the whole of his or her lot exclusively, as a unit, under color of title established by deed. In like manner, the plaintiffs claim all of the oil and gas rights appurtenant to the 212-acre parcel—Block F of Tract Number 56—composed of their respective lots and including the 47.61 acre ''Reservoir Site.'' Acceptance of the deeds which conveyed to them the oil and gas rights and the subsequent exercise of acts of ownership by the plaintiffs were the equivalent of an entry into possession of these rights under color of title to the whole interest in severalty. The possession of the Standard Oil Company was the possession of the plaintiffs. (*Palin* v. *Sweitzer*, 8 Cal. 2d 329, 331 [65 P.2d 351]; *Weyse* v. *Biedebach*, 86 Cal.App. 712, 722 [261 P. 1086].) Both were acting under instruments of title implying the transfer of an interest unimpaired by any cotenancy. The execution and recordation of agreements extending and modifying the original lease, which occurred in 1942 and 1943, the receipt of royalties over a period of time encompassing 19 to 33 years—33 years as to five plaintiffs, 26 as to one, and 19 years as to two—without an accounting, the lack of any claim by the defendants to any part of the property, to the royalties or to the oil and gas rights (*Palin* v. *Sweitzer, supra,* 8 Cal.2d 329, 330), the fact that the plaintiffs ''knew nothing of the existence of the cotenants'' (*West* v. *Evans, supra,* 29 Cal.2d 414, 418; *Johns* v. *Scobie, supra,* 12 Cal.2d 618, 624), and the possessory acts of the lessee in the discovery, development, operation and maintenance of oil wells on the leased property, justify the conclusion that the plaintiffs were holding these interests adversely to any outstanding claim, that this holding was notorious, that they were acting under the color of title conferred on them by the deeds from Samuel and his wife, and that the defendants had constructive knowledge of these facts. (*West* v. *Evans, supra,* 29 Cal.2d 414, 419; *Palin* v. *Sweitzer, supra,* 8 Cal.2d 329, 330.) The following statement by the court in *Akley* v. *Bassett, supra,* 189 Cal. 625, 642, is apropos to this case: ''The extent of the estate purporting to be conveyed characterized the entry and subsequent possession, and showed beyond doubt that they were made under a claim to the whole, and were with the intent to oust all others asserting an interest.''

Moreover, the recordation of the plaintiffs' deeds, under

the circumstances of this case, constituted constructive notice that their claims were hostile and adverse to any interest of Jonathan or the defendants. ▇▇▇ It is now the settled law of this state ''that where a tenant in common enters into possession and claims under an invalid deed purporting to convey the property to him, the recordation of the deed is notice to his cotenants of its existence and therefore of the adverse character of his claim so as to start the statute of limitations running, at least where, as here, he knew nothing of the existence of the other cotenants.'' (*Johns* v. *Scobie, supra,* 12 Cal.2d 618, 624.) In support of their position to the contrary the defendants cite *West* v. *Evans,* 29 Cal.2d 414 [175 P.2d 219], in which recordation alone, independent of other facts, was relied upon to establish notice and, for this reason, is clearly distinguishable from and not controlling in the matter at hand.

The defendants further contend that the possessory acts relied upon to establish a title by adverse possession could not constitute notice to them, as the true owners, that the plaintiffs claimed adversely to their interest in the property, because they had no knowledge of such interest. This contention is without merit. ▇▇▇ A person claiming title by adverse possession is not required to ''establish that the record owner knew of his own rights in the land in question. All that the claimant must show, however, is that his occupation was such as to constitute reasonable notice to the true owner that he claimed the land as his own. The fact that the record owner was unaware of his own rights in the land is immaterial.'' (*Sorensen* v. *Costa, supra,* 32 Cal.2d 453, 461.)

▇▇▇ The trial court's finding with respect to the payment of taxes is supported by the evidence. From the time of acquisition, each plaintiff paid the taxes assessed against the lot conveyed to him or her, resulting in the payment by plaintiffs annually of all taxes on all of said lots since 1934. The mineral rights appurtenant to this property were assessed separately. Under the ''Standard Oil'' lease the lessors and the lessee agreed to share payment of these taxes on these rights in accord with an agreed formula. Pursuant to this lease ''Standard'' as lessee paid all of these taxes and the plaintiffs, as lessors, reimbursed it for their agreed share. In reality, the payment made by ''Standard'' was made on behalf of the plaintiffs and constituted payment by them. (*Williams* v. *Stillwell,* 217 Cal. 487, 492 [19 P.2d 773] ; *Gray*

v. *Walker,* 157 Cal. 381, 386 [108 P. 278].) The lease in question, by providing that the lessee should pay a share of the taxes levied and assessed against the leased premises, in effect, required it to pay an amount of money equal to that share of the taxes, and its payment of this money was made to discharge that obligation and not as a payment on its behalf of taxes, as such, "levied and assessed upon such land." (Code Civ. Proc., § 325.)

The defendants contend that "Standard" was in possession for all the cotenants, and that any payment of taxes made by it was made on behalf of all. This contention is based on a false premise. As heretofore noted, the ocupancy of the plaintiffs and their lessee, under the circumstances of this case, was not presumed to be the occupancy of a cotenant.

The defendants further contend that the taxes were paid "with what the property yielded" and, for this reason, were not paid by the plaintiffs. Section 325 of the Code of Civil Procedure which prescribes payment by the occupant of all taxes levied and assessed upon the subject property during the possessory period, as an element of adverse possession, does not require that such taxes be paid with money obtained from sources other than the property claimed.

The determination by the trial court that the plaintiffs have a good record title under the 1886 deed and good title by adverse possession under the entry and occupancy by the plaintiffs was correct and should be affirmed. Our conclusions in this regard render unnecessary a consideration of the effect of the 1888 correction deed or the sufficiency of the evidence to establish adverse possession by Samuel. For like reasons, the contentions of plaintiffs respecting the finding of the trial court in their favor, under the doctrines of estoppel and laches, need not be considered. These conclusions also dispose of the issues on appeal which involve the cross-defendant Standard Oil Company of California.

After filing a notice of appeal from the judgment herein, and during the course of proceedings to prepare a transcript on appeal, the defendants-cross-complainants and the cross-defendant, Standard Oil Company of California, filed written requests for a correction of proposed transcripts on appeal. Alleged errors in these transcripts concerned a minute order and other entries in the clerk's transcript, and inaccuracies in the reporter's transcript with respect to a hearing on August 30, 1956, which dealt with issues between the cross-complainant and the cross-defendant, Standard Oil Company.

A hearing was held upon these requests at which the court reporter was present and testified. Subsequently the court proposed certain corrections in the reporter's transcript. Thereupon the defendants-cross-complainants filed objections to the proposed corrections and moved for a new trial under the provisions of section 953e of the Code of Civil Procedure upon the ground that the transcript was incomplete and contained guesses, surmise, uncertainty and substitution. The motion for a new trial stated that the issue involved "pertains to cross-complainants' right and contentions against cross-defendant, Standard Oil Company . . ." After a further hearing, at which no evidence was introduced, the court made its order correcting parts of the clerk's transcript, overruling objections to the controversial minute order, as well as to the proposed corrections of the reporter's transcript, settling both transcripts as corrected and denying the motion for a new trial. Thereupon the defendants-cross-complainants appealed from this order to the Supreme Court, which, in turn, denied a motion to dismiss and transferred the appeal to this court.

There is a presumption that the clerk's minutes correctly related the order to which objection was made, which supports the finding of the trial court to this effect. (*Wutchumna Water Co.* v. *Superior Court,* 215 Cal. 734, 737 [12 P.2d 1033] ; *People* v. *Palmer,* 49 Cal.App.2d 567 [122 P.2d 109].) Moreover, this order referred to matters concerning the accounting phase of this case, and its effect has been rendered inconsequential by the decision on the issue of title. No prejudicial error in settling the clerk's transcript appears.

Any inaccuracies in the reporter's transcript did not relate to matters involving the title dispute between plaintiffs and defendants; they related to proceedings under the cross-complaint and concerned solely the issues therein raised respecting the relationship between cross-complainants and the cross-defendant, Standard Oil Company, based upon the premise that the cross-complainants are owners of a cotenancy interest in the "Reservoir Site." The judgment that plaintiffs are the sole owners of that property renders these issues moot. Under these circumstances no prejudice to appellants resulted from the order settling the reporter's transcript as corrected, and it is unnecessary to determine whether the trial court abused its discretion under the circumstances. The order should be affirmed.

Assuming without deciding that cross-complainants' motion for a new trial came within the purview of section 953e of the Code of Civil Procedure, the trial court's denial thereof did not constitute prejudicial error. It has been held uniformly "that the exercise of the power by the court under that section is discretionary, and that an order denying a motion made pursuant thereto should not be reversed except for an abuse of discretion." (*Fickett* v. *Rauch*, 31 Cal.2d 110, 112 [187 P.2d 402].) The moving party in such a matter must "indicate substantial controversial issues concerning which a judgment on the merits would depend." (*Fickett* v. *Rauch, supra*, 31 Cal.2d 110, 115.) The motion in question stated that the issue involved pertained to "cross-complainants' rights and contentions against cross-defendant, Standard Oil Company." The judgment herein did not depend upon this issue. In any event, as heretofore noted, the issue referred to in this motion now is moot. No prejudice to cross-complainants has resulted from the order of denial.

We have considered other objections made by the defendants with respect to rulings upon the evidence and the sufficiency of the pleadings, but find them without merit.

The judgment and orders appealed from are affirmed.

Mussell, Acting P. J., and Shepard, J., concurred.

Petitions for a rehearing were denied February 18, 1959, and appellants' petitions for a hearing by the Supreme Court were denied March 18, 1959.